John ARMSTRONG, et al., Plaintiffs,

v.

Pete WILSON, et al., Defendants.

No. C 94–2307 CW.

United States District Court,
N.D. California.

Sept. 20, 1996.

---

Warren E. George, McCutchen Doyle Brown & Enersen LLP, San Francisco, CA, Elaine Feingold, Disability Rights Education & Defense Fund, Inc., Berkeley, CA, Michael W. Bien, Rosen Bien & Asaro, San Francisco, CA, Donald Specter, Prison Law Office, San Quentin, CA, for plaintiffs.

Roy Zattiero, pro se.

Morris Lenk, CA State Atty. General's Office, George D. Prince, Deputy Atty. General, CA State Atty. General's Office, San Francisco, CA, for defendants.

Mary Beth Uitti, U.S. Attorney's Office, San Francisco, CA, Sharon N. Perley, U.S.D.J.—Disability Rights Section, Civil Rights Division, Washington, DC, for United States of America, Amicus Curiae.

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

WILKEN, District Judge.

Plaintiffs, a certified class consisting of all present and future California state prison inmates and parolees with mobility[1], sight, hearing, learning or kidney disabilities, have moved for injunctive relief under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131—34, and Section 504 of the Rehabilitation Act of 1973 ("the Rehabilitation Act" or "Section 504"), 29 U.S.C. § 794. Defendants, various California state officials being sued in their official capacities, have moved for summary judgment pursuant to the Stipulation and Order for Procedures to Determine Liability and Remedy entered on July 9, 1996 (the "Stipulation"). The United States Department of Justice ("DOJ") has submitted an amicus brief in support of Plaintiffs' opposition. The matter was heard on July 19, 1996. Having considered all of the papers filed by the parties and oral argument on the motion, the Court denies the motion.

*FACTS*

Defendants move to strike Plaintiffs' separate statement of undisputed facts. The Court grants the motion on the grounds that the parties have stipulated that this summary judgment motion is to be decided solely on the facts included in the parties' joint Statement of Stipulated Facts.

The following is a brief summary of the facts as provided in the Statement of Stipulated Facts. The California Department of Corrections ("CDC") operates over 31 prisons housing in excess of 130,000 inmates. Some of these facilities receive federal financial assistance. The CDC has conducted surveys to identify certain inmates with disabilities. These surveys have found that: (1) 345 inmates use wheelchairs due to permanent disabilities; (2) 650 inmates have permanent lower extremity impairments which may require the use of an assistive device such as a walker, cane or prosthesis; (3) 141 inmates are deaf or have hearing impairments such that, even with a hearing aid, they are not able to hear effectively or to hear emergency warnings; (4) 219 inmates are blind or have vision that cannot be corrected to 20/100 with corrective lenses. HIV-positive inmates are placed in various units in facilities throughout the system. Inmates with mental health problems are clustered and frequently separated from other inmate populations.

The CDC initiated a self-evaluation in 1995 pursuant to the requirements of the ADA, but has not completed it. In April, 1995, the CDC established and implemented a new administrative grievance procedure which inmates and parolees with disabilities may use to submit grievances or requests for accommodations on matters related to their disabilities. There remain significant problems in implementing this procedure.

The CDC's written policies and procedures for emergencies do not specifically address the evacuation of prisoners with disabilities. Some CDC facilities do not have visual alarms or strobe lights to warn prisoners

---

1. Prisoners with mobility impairments who are housed at the Correctional Medical Facility at
Vacaville are excluded from the class.

with hearing impairments of emergencies. When emergency situations arise in prison areas other than living units, some inmates with disabilities may not be aware of, or be able to respond to, emergency warnings of impending danger.

Most inmates who participate in educational classes, vocational training, or have work assignments, including those with disabilities, earn ½ time sentence credits to reduce their time in custody. Health care providers classify inmates as "totally medically disabled," "medically unassigned," or "light restricted duty." A "totally medically disabled" classification allows the inmate to earn ½ time sentence credits without being required to participate in a program, while a "medically unassigned" classification allows the inmate to earn ⅓ time sentence credits. A "light restricted duty" classification allows the inmate to participate in programs in accordance with a specified restriction due to a physical or mental condition. Some inmates with severe disabilities have been inappropriately classified as medically unassigned rather than totally medically disabled and only earn ⅓ instead of ½ time credits against their sentences. Inmates designated as "light restricted duty" may be assigned to jobs that are inappropriate for their limitations. The range of vocational programs available to inmates with disabilities is more limited than that available to other inmates.

### LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Eisenberg v. Insurance Co. of North America,* 815 F.2d 1285, 1288–89 (9th Cir. 1987). For the purposes of this motion, the parties have stipulated that there are no material facts in dispute. The Court, there-fore, must decide whether the moving party is entitled to summary judgment as a matter of law.

### DISCUSSION

Defendants argue that the protections of the ADA and the Rehabilitation Act do not extend to inmates or parolees of state correctional facilities and that Defendants are immune from liability under the Eleventh Amendment of the United States Constitution. While the Ninth Circuit has held that the Rehabilitation Act applies to state prisons, it has not yet considered whether the ADA is applicable to state correctional facilities.[2] Nor has the Ninth Circuit ruled on whether state prison officials have immunity under the Eleventh Amendment for violations of the ADA and the Rehabilitation Act. These, then, are issues of first impression in this Circuit.

### I.

### APPLICABILITY OF THE ADA AND THE REHABILITATION ACT TO STATE CORRECTIONAL FACILITIES

The Court will not address Defendants' argument that prisoners and parolees are adequately protected under the First, Eighth, and Fourteenth Amendments of the United States Constitution and, therefore, the protections provided under the Rehabilitation Act and the ADA are unnecessary. One need only look to the undisputed stipulated facts of this case to find that this argument is erroneous. Furthermore, it is not the proper role of the judiciary to preempt Congress' decision that there is a need for such legislation.

#### A. Ninth Circuit Case Law

##### 1. Rehabilitation Act

Although the Ninth Circuit has held, in *Bonner v. Lewis,* 857 F.2d 559, 562 (9th

---

**2.** Only one district court in the Ninth Circuit has squarely addressed the issue of whether the ADA applies to prisons. *Bullock v. Gomez,* 929 F.Supp. 1299 (C.D.Cal.1996) held that the ADA does apply to prisons. In *Fowler v. Gomez,* 1995 WL 779128, *2 (N.D.Cal.1995), a qualified immunity case, a judge of this Court found that there was no authority to "clearly establish" that the ADA applied to state prisons at the time of the alleged incident in question.

Cir.1988), that the Rehabilitation Act applies to state prison facilities, Defendants argue that this Court should arrive at a different result. Defendants argue that, since *Bonner* was decided, the Supreme Court has clarified the proper analysis to be used by a district court to determine the applicability of federal statutes to state prisons. Defendants contend that utilization of this analysis will lead to the conclusion that neither the Rehabilitation Act nor the ADA are applicable to state prisons. The Court does not agree.

Section 504 of the Rehabilitation Act of 1973 states, in pertinent part:

No otherwise qualified individual with a disability in the United States, ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance
 . . .

29 U.S.C. § 794.

In *Bonner,* the Ninth Circuit based its holding primarily on the plain language of the Act, which states that it "applies to 'any program or activity receiving Federal financial assistance'", and on the Justice Department's implementing regulations which require compliance by correctional facilities under 28 C.F.R. § 42.503(f). *Bonner,* 857 F.2d at 562. The court noted that "[t]he Supreme Court has repeatedly emphasized that federal regulations are 'an important source of guidance on the meaning of § 504.'" *Id.* (citing *School Board of Nassau County v. Arline,* 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987) (parenthetical omitted) and *Consolidated Rail Corp. v. Darrone,* 465 U.S. 624, 634 & nn. 14–16, 104 S.Ct. 1248, 1254 & nn. 14–16, 79 L.Ed.2d 568 (1984)).

The Ninth Circuit rejected the defendants' argument that, because the purpose of the Rehabilitation Act is to foster vocational rehabilitation and independent living, it is not applicable to prison inmates who "are hardly in need of help to live independently within their prisons." *Id.* Instead, the court viewed the goals of independent living and vocational rehabilitation as mirroring the goals of prison officials who "attempt to reha-

bilitate prisoners and prepare them to lead productive lives once their sentences are complete." *Id.*

In *Gates v. Rowland,* 39 F.3d 1439 (9th Cir.1994), the Ninth Circuit elaborated on its holding in *Bonner.* First, the court, citing *Bonner,* reaffirmed that "the Act is applicable to prisons receiving federal financial assistance." *Gates,* 39 F.3d at 1446. The court noted, however, that the Rehabilitation Act was intended for use within the general population, and was not specifically tailored to deal with the prison environment. *Id.* The court reasoned that, "just as constitutional rights of prisoners must be considered in light of the reasonable requirements of effective prison administration, so must statutory rights applicable to the nation's general population be considered in the light of effective prison administration." *Id.* The court held that the standard explicated by the Supreme Court in *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) for reviewing constitutional rights in a prison setting should also be used when reviewing the rights provided by the Rehabilitation Act in a prison setting. *Id.* at 1447. In *Turner,* the Supreme Court articulated the rule that, "'when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests'". *Id.* (quoting *Turner,* 482 U.S. at 89, 107 S.Ct. at 2261).

Other courts, and Defendants, have interpreted *Gates* to mean that the Ninth Circuit is retreating from its holding in *Bonner. See e.g. Torcasio v. Murray,* 57 F.3d 1340, 1349 n. 7 (4th Cir.1995), *cert. denied by Torcasio v. Angelone,* —— U.S. ——, 116 S.Ct. 772, 133 L.Ed.2d 724 (1996) and *Little v. Lycoming County,* 912 F.Supp. 809, 819 (M.D.Pa.1996). The Court disagrees. *Gates* is a reaffirmation and clarification of *Bonner,* not a retreat from it.

Defendants argue that subsequent to *Bonner,* the Supreme Court, in *Gregory v. Ashcroft,* 501 U.S. 452, 460–61, 111 S.Ct. 2395, 2400–01, 115 L.Ed.2d 410 (1991), clarified the proper analysis for determining whether a federal enactment is applicable to state prisons. They contend that, in *Gregory,* the

Court stated a new rule that requires that Congress make its intention unmistakably clear in the language of the statute if it intends to alter the usual constitutional balance between the States and the federal government in traditionally sensitive areas. Defendants conclude that, had the Ninth Circuit applied this "new" plain statement rule in *Bonner*, it would have held differently.

The Court disagrees. The plain statement rule was not originally articulated in *Gregory*. Although *Gregory* recites this rule, it cites prior cases as authority. One of the cases cited in *Gregory* is *United States v. Bass*, 404 U.S. 336, 349, 92 S.Ct. 515, 523, 30 L.Ed.2d 488 (1971) in which the Court stated that, "[i]n traditionally sensitive areas, such as legislation affecting the federal balance, the requirement of clear statement assures that the legislature has in fact faced, and intended to bring into issue the critical matters involved in the judicial decision." *Gregory*, 501 U.S. at 461, 111 S.Ct. at 2401 (citing *Bass*, 404 U.S. at 349, 92 S.Ct. at 523). *Gregory* also cites *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947) for the proposition that, "Congress should make its intention 'clear and manifest' if it intends to pre-empt the historic powers of the States." *Gregory*, 501 U.S. at 461, 111 S.Ct. at 2401. Even *Seminole Tribe of Florida v. Florida*, — U.S. —, —, 116 S.Ct. 1114, 1185, 134 L.Ed.2d 252 (1996), the case Defendants use to support their proposition that *Gregory* adopted a new rule, cites *Bass* as well as *Gregory*. It is clear that the "new" rule Defendants proffer has been part of our jurisprudence for many decades. It is patently unreasonable to assume that the Ninth Circuit did not take this rule into consideration in deciding *Bonner*. Although not explicitly stating that it was applying the plain statement rule, in *Bonner* the Ninth Circuit did look for Congressional intent to apply the Rehabilitation Act to state prisons and found such intent in the plain language of the statute and the DOJ's implementing regulations. *Bonner*, 857 F.2d at 562.

Defendants point to two post-*Gregory* Ninth Circuit cases to illustrate that, had the Ninth Circuit used the plain statement rule in *Bonner*, it would not have held the Act applicable to state prisons. In *Hale v. Arizona*, 993 F.2d 1387, 1393, 1395 (9th Cir.1993) (*en banc*), *cert. denied*, 510 U.S. 946, 114 S.Ct. 386, 126 L.Ed.2d 335 (1993), the Ninth Circuit declined to extend the protections of the Federal Labor Standards Act to inmates required by state law to work at hard labor, but determined that the Act may be applicable to inmates in other employment situations. In *Jeldness v. Pearce*, 30 F.3d 1220 (9th Cir.1994), the Ninth Circuit held that Title IX, which prohibits discrimination on the basis of sex by any educational program receiving federal funding, applies to state prisons. *Id.* at 1225. In *Hale* and *Jeldness* the Ninth Circuit focused on a list of statutorily exempt programs which did not include prisons and determined that noninclusion in an exempt list creates a strong implication of inclusion. *Hale*, 993 F.2d at 1392; *Jeldness*, 30 F.3d at 1225.

Defendants contend that the analyses in *Hale* and *Jeldness* rejected the basis for the Ninth Circuit's conclusion in *Bonner*, because, in *Bonner*, the court merely based its holding on the expansive language of the Rehabilitation Act. However, the *Bonner* court also based its holding upon the DOJ's implementing regulations that specifically bring state prisons within the ambit of the Act. *Bonner*, 857 F.2d at 562.

Congress delegated to the head of each agency the authority to promulgate regulations under the Rehabilitation Act. 29 U.S.C. § 794(a). The DOJ regulations define the term "program" as including the "operations of a department of corrections," and the term "benefit" as including "sentencing, confinement, or other prescription of conduct." 28 C.F.R. §§ 42.540(h) and (j). In *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984) the Court held that, where Congress has left a gap for the agency to fill, the agency's regulations "are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." This Court can find nothing that is arbitrary or capricious in the DOJ's regulations. The broad language of the statute which indicates it reaches "any

program or activity receiving Federal financial assistance" imparts to federal agencies, which includes the DOJ, the task of defining the term, "any program". The inclusion of state departments of corrections is a permissible construction of the term, "any program", and, under *Chevron,* this construction must be given deference.

The Court also finds persuasive the Third Circuit's reasoning in *Inmates of the Allegheny County Jail v. Wecht,* 1996 WL 474106, *10 (3rd Cir.) regarding the applicability of the plain statement rule to decide whether the Rehabilitation Act and the ADA applies to correctional facilities. In *Inmates,* the Third Circuit found that the language of the Rehabilitation Act and of the ADA clearly indicates that they cover all aspects of state and local governance. *Id.* at *6 (citing, as to the Rehabilitation Act, 29 U.S.C. § 794(a) which states that the Act applies to "any program or activity receiving Federal financial assistance" and 29 U.S.C. § 794(b)(1)(A) which defines "program or activity" to be "all of the operations of a department, agency, special purpose district, or other instrumentality of a State or local government" and as to the ADA, 42 U.S.C. § 12132 which states that it applies to all public entities and 42 U.S.C. § 12131(1) which defines a "public entity" as "any State or local government [and] any department, agency, special purpose district, or other instrumentality of a State or States or local government.") Based on the clear language of the statutes the court held that both the Rehabilitation Act and the ADA apply to state and local correctional facilities. *Id.* The court determined that the plain statement rule was inapplicable to its analysis since this rule was not "intended by the Supreme Court to provide a canon of statutory interpretation which can be of help in interpreting statutes whose over-all design indisputably contemplates both that the policies and practices of state as well as local governments are required to conform to norms established by Congress . . ." *Id.* at *9.

The Court rejects Defendants' argument that *Bonner* may apply in Arizona, the state in which the case originated, but not in California. Defendants' rationale is that in Arizona the goal of incarceration is rehabilitation, while in California the goal of incarceration is punishment. Plaintiffs cite many statutes in the California Penal Code and Regulations that indicate that, while the goal of incarceration itself may be punishment, the goal of many prison programs and activities is rehabilitation and reintegration of convicted felons into society.

The Court concludes that the Ninth Circuit's analysis in *Bonner* is as correct today as it was in 1988 when the Ninth Circuit reached its decision. The Court holds that the Rehabilitation Act applies to prisons.

### 2. The ADA

In language almost identical to the Rehabilitation Act, the ADA provides, in relevant part:

[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity.

42 U.S.C. § 12132.

Defendants contend that utilization of the plain statement rule will lead to the conclusion that the ADA does not apply to state prisons. The Court does not agree.

The Ninth Circuit has indicated that the ADA is to be judicially interpreted in the same manner as the Rehabilitation Act. *Collings v. Longview Fibre Co.,* 63 F.3d 828, 832 n. 3 (9th Cir.1995), *cert. denied,* — U.S. ——, 116 S.Ct. 711, 133 L.Ed.2d 666 (1996). This determination is based on the substantially identical language in the two Acts and the legislative history of the ADA which indicates that Congress intended judicial interpretation of the Rehabilitation Act to be incorporated by reference into interpretation of the ADA. *Id.*

Pursuant to *Collings,* the Court must apply the Ninth Circuit's reasoning in *Bonner* to decide whether the ADA applies to state correctional facilities and programs. As noted above, the broad language of the Rehabilitation Act is repeated in the ADA.

The ADA expands the reach of the anti-discrimination provisions of the Rehabilitation Act from "any public facility that receives Federal funding" to "any public entity." As it did in the Rehabilitation Act, Congress has specifically delegated authority to the DOJ to promulgate regulations implementing the ADA. 42 U.S.C. § 12134(a). The DOJ's regulations provide that "all programs, services, and regulatory activities relating to law enforcement, public safety, and the administration of justice, including courts and correctional institutions" are governed by the ADA. 28 C.F.R. § 35.190(b)(6). The Court finds that the expansive language of the ADA, together with the DOJ's regulations which it promulgated pursuant to a specific Congressional delegation of authority, lead to the conclusion that the ADA is applicable to state correctional institutions. Following the Ninth Circuit's instruction in *Gates*, the Court also concludes that, like the Rehabilitation Act, the ADA must be applied in a prison environment with consideration of legitimate penological interests. *See Gates*, 39 F.3d at 1447.

## B. Case Law in Other Circuits

Defendants argue that this Court should be persuaded by cases in other circuits in which, Defendants contend, the courts have held the Rehabilitation Act or the ADA are inapplicable to prisons.

Three circuits have directly addressed this issue.[3] As discussed above, the Third Circuit has held that the Rehabilitation Act and the ADA apply to state and local correctional institutions. The Tenth Circuit has held that the Rehabilitation Act and the ADA are inapplicable to state prison employment programs. In *Williams v. Meese*, 926 F.2d 994 (10th Cir.1991), the court held that the Rehabilitation Act is not applicable to federal prison employment and vocational programs because the "Federal Bureau of Prisons does not fit the definition of 'programs or activi-

ties' governed by [the Rehabilitation Act]." *Williams*, 926 F.2d at 997. Relying upon *Williams*, and without any further explanation, the Tenth Circuit held in *White v. Colorado*, 82 F.3d 364 (10th Cir.1996), that the ADA does not apply to state prison employment situations. *White*, 82 F.3d at 367.

The Fourth Circuit, in *Torcasio v. Murray*, did not actually hold that the Rehabilitation Act and the ADA do not apply to state prisons, but strongly intimated that they do not. *Torcasio*, a qualified immunity case, held that it was not clearly established, at the time of the alleged discrimination, that either the Rehabilitation Act or the ADA applied to state prisons. *Torcasio v. Murray*, 57 F.3d 1340, 1352 (4th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 772, 133 L.Ed.2d 724 (1996). The violations were alleged to have occurred in April, 1993 through the spring, 1994. The *Torcasio* court took the Ninth Circuit's 1988 *Bonner* decision into consideration in its discussion. In analyzing the DOJ regulations, however, the *Torcasio* court failed to locate the specific sections which provide that the Rehabilitation Act applies to correctional institutions. *Id.* at 1351. The court looked at 28 C.F.R. § 42.503(f), the only section specifically cited in *Bonner*, and dismissed it as too general to establish that the DOJ intended the Rehabilitation Act to apply to prisons. The court did not mention the sections, in the definitional parts of the regulations, that indicate that the Rehabilitation Act applies to state prisons. *See* 28 C.F.R. §§ 42.540(h) and (j). The court similarly did not mention 28 C.F.R. § 35.190(b)(6), the regulation that specifies that the ADA applies to state prisons. The court intimated that, had the plaintiff been able to show that the regulations specifically applied to state prisons, it might have held differently. *Id.*

As discussed above, *Torcasio* also erroneously concluded that in *Gates* the Ninth Circuit retreated from its holding in *Bonner*.

---

**3.** As noted by Defendants, the Seventh Circuit, in a recent opinion by Judge Posner, stated that, "It is very far from clear that prisoners should be considered 'qualified individuals' within the meaning of the [ADA]. Could Congress really have intended disabled prisoners to be mainstreamed into an already highly restricted prison

society? ... [T]here are formidable practical objections to burdening prisons with having to comply with the onerous requirements of the [ADA], ..." *Bryant v. Madigan*, 84 F.3d 246, 248 (7th Cir.1996). This statement was dicta, however. The court proceeded to analyze the plaintiff's claim under the ADA. *Id.* at 249.

*Torcasio,* 57 F.3d at 1346, 1349 n. 7. Also, as noted by Plaintiffs, the questions raised in *Torcasio* as to whether prison programs qualify as "programs" under the Rehabilitation Act and the ADA, were answered in the affirmative by the Ninth Circuit in *Bonner. Bonner,* 857 F.2d at 562 ("the [Rehabilitation] Act's goals of independent living and vocational rehabilitation should in fact mirror the goals of prison officials as they attempt to rehabilitate prisoners and prepare them to lead productive lives....")

## II.

### IMMUNITY UNDER THE ELEVENTH AMENDMENT

Defendants argue that the Eleventh Amendment provides them with immunity from liability under the Rehabilitation Act and the ADA. Defendants acknowledged, during oral argument, that their reasoning would lead to the conclusion that the Rehabilitation Act and the ADA are not applicable to any state agency.

In *Seminole Tribe v. Florida,* —— U.S. ——, ——, 116 S.Ct. 1114, 1123, 134 L.Ed.2d 252 (1996), the Supreme Court reiterated the principle that, pursuant to the Eleventh Amendment, States may not be sued in federal court unless Congress, acting pursuant to a valid exercise of its power, unequivocally expresses its intent to abrogate the States' immunity. *Id.* (citing *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1985)). Defendants concede that Congress clearly expressed its intent in the Rehabilitation Act and the ADA to abrogate the States' immunity. The issue to be resolved is whether, in abrogating the States' immunity, Congress acted pursuant to a valid exercise of its power.

In *Seminole Tribe,* the Court explained that Congressional authority to abrogate States' immunity had been previously found under two provisions of the Constitution. *Id.,* —— U.S. at ——, 116 S.Ct. at 1125. In *Fitzpatrick v. Bitzer,* 427 U.S. 445, 452–56, 96 S.Ct. 2666, 2669–72, 49 L.Ed.2d 614 (1976), the Court had held that § 5 of the Fourteenth Amendment allowed Congress to abrogate States' immunity from suit and, in

*Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 19–20, 109 S.Ct. 2273, 2284–85, 105 L.Ed.2d 1 (1989), the Court had held that the Interstate Commerce Clause granted Congress the power to abrogate immunity. *Id.* In *Seminole Tribe* the Court overruled *Union Gas* so that Congress now has authority to abrogate the States' immunity pursuant only to the Fourteenth Amendment. *Id.,* —— U.S. at ——, 116 S.Ct. at 1131.

Defendants argue that Congress lacks authority to abrogate their immunity under the Rehabilitation Act or the ADA because neither was validly enacted pursuant to the Fourteenth Amendment. Plaintiffs disagree, and also argue that Defendants, because they are state officials, are not immune from suit for injunctive relief under the doctrine of *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

### A. The ADA Was Enacted Pursuant to the Fourteenth Amendment

The ADA specifically states that its purpose is "to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day to day by people with disabilities." 42 U.S.C. § 12101(b)(4). In spite of this explicit statement by Congress, Defendants argue that simply because Congress has stated that the legislation was enacted pursuant to its Fourteenth Amendment authority does not make it so.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." Section 5 of the Amendment states that "[t]he Congress shall have power to enforce, by appropriate legislation, the provisions of this article." As explained by the Supreme Court, "... § 5 is a positive grant of legislative power authorizing Congress to exercise its discretion in determining whether and what legislation is needed to secure the guarantees of the Fourteenth Amendment." *Katzenbach v. Morgan,* 384 U.S. 641, 648, 86 S.Ct. 1717, 1722, 16 L.Ed.2d 828 (1966). Section 5 is intended to provide to Congress the same broad powers expressed in the Neces-

sary and Proper Clause, art. I, § 8, cl. 18. *Id.* at 650, 86 S.Ct. at 1723. The standard to be used in determining whether legislation is appropriate under the Necessary and Proper Clause was formulated in *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 421, 4 L.Ed. 579 (1819):

> Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the constitution, are constitutional.

*Id.*

■ Using the *McCulloch* test, to determine if legislation enacted pursuant to the Fourteenth Amendment is appropriate, a court must determine whether the legislation: (1) is plainly adapted to the end of enforcing the Equal Protection Clause, and (2) is not prohibited by, but is consistent with the "letter and spirit of the constitution." *Morgan*, 384 U.S. at 651, 86 S.Ct. at 1723.

Defendants cite *Pierce v. King* for the proposition that the ADA is not adapted to enforcing the Fourteenth Amendment. *Pierce v. King*, 918 F.Supp. 932, 940 (E.D.N.C.1996). The argument in *Pierce* begins with the assumption that "[t]he Fourteenth Amendment has traditionally been understood as protecting individuals from state action that would infringe upon individual liberties." *Id.* The argument continues with the contention that the ADA is unlike traditional anti-discrimination laws because the ADA creates entitlements whereas the traditional laws seek to produce an environment in which individuals are treated in a neutral manner. *Id.* Defendants contend that mandates for prisons to conduct self-evaluations, complete transition plans, establish grievance procedures, and provide notice of the ADA to inmates are administrative burdens that are unconnected with the Fourteenth Amendment's prohibition against discrimination. They say that obligations to identify inmates with learning disabilities and to provide special programs for them distort notions of equal treatment. Similarly, they contend that the requirement of certain structural accessibility features goes far beyond any-

thing that could be based on the Fourteenth Amendment.

The Court disagrees with Defendants' theory. Some of the findings made by Congress in enacting the ADA are that: (1) discrimination against disabled individuals in the form of isolation and segregation is a serious and pervasive social problem; (2) disabled individuals are a discrete and insular minority who have been subjected to a history of unequal treatment and relegated to a position of political powerlessness based upon false stereotypical assumptions; and, (3) the Nation's goals are to assure equality, full participation, independent living and economic self-sufficiency to individuals with disabilities. 42 U.S.C. § 12101(a). Congress indicated in the ADA that it intended to invoke its full authority under the Fourteenth Amendment to address nationwide discrimination against the disabled. 42 U.S.C. § 12101(b)(4).

Rectifying discrimination often has taken the form of the prohibition of action that is discriminatory. Perhaps, as Defendants argue, this is the traditional manner in which legislation under the Fourteenth Amendment has been framed. However, eliminating discrimination may require affirmative relief. *See City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 490, 109 S.Ct. 706, 720, 102 L.Ed.2d 854 (1989) (O'Conner, J., concurring and dissenting) ("The power to 'enforce' [the Fourteenth Amendment] may at times also include the power to define situations which Congress determines threaten principles of equality and to adopt prophylactic rules to deal with those situations.")

■ The goal of the ADA, to eliminate discrimination against an identifiable group of individuals, is a proper invocation of the Equal Protection Clause. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 446–47, 105 S.Ct. 3249, 3257–58, 87 L.Ed.2d 313 (1985) (holding that persons with disabilities are entitled to protection under the Fourteenth Amendment). The practical effect of the ADA will be to eliminate barriers against entry into physical structures, into ongoing programs and services, and into the mainstream of society itself for many individuals with disabilities. While this may re-

quire affirmative measures on the part of correctional institutions to insure inclusion of those who are now excluded from the mainstream of prison life, the requirement of such measures does not exceed the authority granted to Congress under § 5 of the Fourteenth Amendment. The ADA, therefore, meets the first prong of the *McCulloch* test.

Defendants have not argued that the ADA is inconsistent with the letter and spirit of the constitution. The Court, therefore, finds that the ADA meets the second prong of the *McCulloch* test. That Congress has invoked the Commerce Clause as well as the Fourteenth Amendment as authority for the ADA does not alter the conclusion that, under the *McCulloch* standard, the ADA is legitimate legislation, pursuant to the Fourteenth Amendment, focused on deterring discrimination on the part of the states. *See EEOC v. County of Calumet*, 686 F.2d 1249, 1253 (7th Cir.1982) (noting that Congress, in enacting modern civil rights legislation, reaches private discrimination indirectly through the Commerce Clause and reaches state discrimination directly through the Fourteenth Amendment). The Court holds that the ADA was legitimately enacted pursuant to Congress' authority under the Fourteenth Amendment.

### B. The Rehabilitation Act was Enacted Pursuant to the Spending Clause and the Fourteenth Amendment

Unlike the ADA, the Rehabilitation Act is silent as to the constitutional authority under which it was enacted. Defendants contend that a close reading of the statute, together with an analogy to similar statutes, leads to the conclusion that the Rehabilitation Act is authorized by Congress' spending power, and not by the Fourteenth Amendment. That the Rehabilitation Act applies only to those entities that receive federal funds is the primary basis for Defendants' contention.

Defendants point to Title VI, 42 U.S.C. § 2000d *et seq.*, and Title IX, 20 U.S.C. § 1681 *et seq.*, of the Civil Rights Act of 1964 as support for their argument. Title VI prohibits discrimination on the basis of race, color, or national origin by any program or activity receiving federal financial assis-

tance. 42 U.S.C. § 2000d. Based upon the legislative history, the Supreme Court determined that Congress intended to enact Title VI pursuant to its spending power. *Guardians Ass'n v. Civil Serv. Comm'n*, 463 U.S. 582, 598–99, 103 S.Ct. 3221, 3230–31, 77 L.Ed.2d 866 (1983). Title IX prohibits discrimination on the basis of sex by any educational program or activities receiving federal financial assistance. 20 U.S.C. § 1681(a). The Supreme Court has reserved the question of whether Title IX was enacted under the Spending Clause or under the Fourteenth Amendment. *Franklin v. Gwinnett County Pub. Schs.*, 503 U.S. 60, 75 n. 8, 112 S.Ct. 1028, 1037 n. 8, 117 L.Ed.2d 208 (1992). The Fifth Circuit, in *Rowinsky v. Bryan Indep. Sch. Dist.*, for a variety of reasons, adopted the view that Title IX was enacted under the Spending Clause. *Rowinsky v. Bryan Indep. Sch. Dist.*, 80 F.3d 1006, 1012 n. 14 (5th Cir.1996), *petition for cert. filed*, 65 U.S.L.W. 3033 (U.S.July 1, 1996) (No. 96–4). First, Title IX was modeled after Title VI and uses identical language. That the Supreme Court in *Guardians Ass'n* held that Title VI was enacted pursuant to the Spending Clause strongly suggests that Title IX also was enacted under the Spending Clause. *Id.* Second, Title IX regulates purely private educational institutions. The receipt of federal funds does not transform a private school into a state actor for purposes of the Fourteenth Amendment. *Id.* Third, the funding incentives provided in Title IX indicate that Congress did not intend to impose absolute obligations on the States. *Id.* Defendants' argument that the Rehabilitation Act, like Titles VI and IX, is enacted under the Spending Clause because it, too, applies only to those entities that receive federal funding is well-taken. However, the contentions of Plaintiffs and amicus that the Rehabilitation Act was enacted under the Fourteenth Amendment are also persuasive. Furthermore, because the language and purpose of the Rehabilitation Act are virtually identical to that of the ADA, and because this Court has found that the ADA was validly enacted pursuant to the Fourteenth Amendment, it follows that the Rehabilitation Act,

also, was enacted under the Fourteenth Amendment.

Plaintiffs point out that two Supreme Court cases indicate that the Rehabilitation Act was passed under the Fourteenth Amendment. In *Atascadero State Hosp. v. Scanlon*, the Supreme Court stated, "Petitioners conceded ... that the Rehabilitation Act was passed pursuant to § 5 of the Fourteenth Amendment. Thus, we first analyze § 504 in light of Congress' power under the Fourteenth Amendment to subject unconsenting States to federal court jurisdiction." *Scanlon*, 473 U.S. 234, 244 n. 4, 105 S.Ct. 3142, 3148 n. 4, 87 L.Ed.2d 171 (1985). Because the issue of Congressional authority was not in dispute in *Scanlon*, that case is not determinative of the issue. The Supreme Court noted in *Welch v. Texas Dept. of Highways and Pub. Transp.* that "[t]he question in *Scanlon* was whether § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, makes state agencies subject to suits for retroactive monetary relief in federal court. The Rehabilitation Act was passed pursuant to § 5 of the Fourteenth Amendment. Congress therefore had the power to subject unconsenting States to suit in federal court." *Welch*, 483 U.S. 468, 472 n. 2, 107 S.Ct. 2941, 2945 n. 2, 97 L.Ed.2d 389 (1987) (citing *Scanlon*). *Welch* provides further evidence that the Supreme Court considers that Congress enacted the Rehabilitation Act pursuant to the Fourteenth Amendment. But, this statement is dicta.

In *Dep't of Educ., State of Haw. v. Katherine D.*, the district court held that the Rehabilitation Act was enacted pursuant to Congress' power under the Fourteenth Amendment. *Department of Education v. Katherine D.*, 531 F.Supp. 517, 530 (D.C.Haw.1982), *aff'd in part, rev'd in part on other grounds*, 727 F.2d 809 (9th Cir. 1983), *cert. denied*, 471 U.S. 1117, 105 S.Ct. 2360, 86 L.Ed.2d 260 (1985). The court based its holding on its analysis of legislative history and Congress' intent, as specifically explicated in the Act, to effectuate equal opportunity for disabled citizens. *Id.* The court concluded that this legislative goal is "precisely the specific legislative intent to effectuate the equal protection rights guaran-

teed by the Fourteenth Amendment which [the Supreme Court] recognized." *Id.* (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976) and *Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978)).

 Congress may enact legislation pursuant to more than one of its constitutional powers. *See EEOC v. County of Calumet*, 686 F.2d at 1253. The Court finds that Congress · utilized its authority under the Spending Clause and under § 5 of the Fourteenth Amendment of the Constitution in enacting the Rehabilitation Act. Because the Court finds that Congressional authority for the ADA and the Rehabilitation Act arises in the Fourteenth Amendment, the Eleventh Amendment does not immunize Defendants from suit.

### C. Doctrine of Ex parte Young

 Even if Defendants were immune under the Eleventh Amendment, their immunity would be subject to the exception of *Ex parte Young*, 209 U.S. 123, 155–56, 28 S.Ct. 441, 452–53, 52 L.Ed. 714 (1908). *Ex parte Young* created an exception to the principle that States may not be sued in federal court unless they consent, or unless Congress, pursuant to a valid exercise of power, unambiguously expresses its intent to abrogate the States' immunity. *Green v. Mansour*, 474 U.S. 64, 68, 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1985). *Ex parte Young* held that the Eleventh Amendment does not preclude federal courts from granting prospective injunctive relief to prevent individual state officials from violating federal law. *Young*, 209 U.S. at 155–56, 28 S.Ct. at 452–53; *Green*, 474 U.S. at 68, 106 S.Ct. at 426.

Citing *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 687, 69 S.Ct. 1457, 1460, 93 L.Ed. 1628 (1949) *superseded in part by* 5 U.S.C. § 702, Defendants argue that *Young* is inapplicable because Plaintiffs' claims are essentially directed against the State, not against the individuals named in the suit. In *Larson*, the Court explained that a suit nominally addressed to a government employee, but which actually requires relief against the government, is barred because the court, in the absence of consent,

**1264**

has no jurisdiction over a suit against the government. *Larson,* 337 U.S. at 688, 69 S.Ct. at 1460. However, there are exceptions to this rule. *Id.* at 689, 69 S.Ct. at 1461. One exception is a case in which the statute conferring power on the government employee is unconstitutional, because the conduct against which relief is sought is beyond the employee's powers and is, therefore, not the conduct of the government. *Id.* at 690, 69 S.Ct. at 1461. This exception is based on the same reasoning as that relied upon in *Young.* "The theory of *Young* was that an unconstitutional statute is void, and therefore does not 'impart to [the official] any immunity from responsibility to the supreme authority of the United States'". *Green,* 474 U.S. at 68, 106 S.Ct. at 426 (citing *Young,* 209 U.S. at 159–60, 28 S.Ct. at 453–54). By the same token, *Young* also held that officials do not have immunity for a continuing violation of federal law. *Id.*

That courts have applied the *Young* doctrine in cases in which inmates sue state prison officials for violations of federal law is further evidence that *Larson* does not apply to the case at bar. *See e.g. Thompson v. Enomoto,* 915 F.2d 1383, 1390 (9th Cir.1990), *cert. denied by Rowland v. Thompson,* 502 U.S. 1071, 112 S.Ct. 965, 117 L.Ed.2d 131 (1992) (holding that state officials not immune, under *Young,* from suits alleging constitutional violations); *Duran v. Carruthers,* 885 F.2d 1485, 1489 (10th Cir.1989), *cert. denied,* 493 U.S. 1056, 110 S.Ct. 865, 107 L.Ed.2d 949 (1990) (under *Young,* prison officials not immune from suit alleging violations of federal constitution and federal statutes). Here, Plaintiffs seek prospective injunctive relief only against state officials acting in their official capacity. Under these circumstances, *Larson* does not apply.

Defendants also argue that, because the ADA and the Rehabilitation Act have detailed enforcement schemes limiting remedies against the State, they come under the exception to *Ex parte Young* applied by the Supreme Court in *Seminole Tribe.* In *Seminole Tribe,* the Court stated that "... where Congress has prescribed a detailed scheme for the enforcement against a State of a statutorily created right, a court should hesi-

tate before casting aside those limitations and permitting an action against a state officer based upon *Ex parte Young.*" *Seminole Tribe,* —— U.S. at ——, 116 S.Ct. at 1132.

The Indian Gaming Regulatory Act (the "IGRA") was the subject of the Court's inquiry in *Seminole Tribe. Id.,* at ——, 116 S.Ct. at 1119. The Court found that the IGRA provides for specific limited remedies against the State. *Id.* The Court reasoned that the limited statutory remedies would be superfluous if a state official could be exposed to the full remedial powers of a federal court in an action brought under *Ex parte Young. Id.,* at ——, 116 S.Ct. at 1133. The Court also reasoned that Congress' creation of the limited remedial scheme is a strong indication that it had no wish to expose States to liability under *Ex parte Young. Id.*

Defendants argue that, like the IGRA, the Rehabilitation Act and the ADA have limited remedial schemes, but Defendants do not specify what they are. To the contrary, the Ninth Circuit has held that "the full panoply of remedies, including equitable relief and monetary damages" are available under the Rehabilitation Act. *Smith v. Barton,* 914 F.2d 1330, 1338 (9th Cir.1990), *cert. denied,* 501 U.S. 1217, 111 S.Ct. 2825, 115 L.Ed.2d 995 (1991); *see also Franklin v. Gwinnett County Pub. Schs.,* 503 U.S. at 72–73, 112 S.Ct. at 1036–37 (stating that the Rehabilitation Act provides a private litigant the full panoply of remedies). The ADA specifically incorporates the "remedies, procedures, and rights" of the Rehabilitation Act. 42 U.S.C. § 12133. Under *Ex parte Young,* Defendants are not immune from this lawsuit.

### CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is DENIED.

IT IS SO ORDERED.