**Michael D. NIHISER, Plaintiff,**

v.

**OHIO ENVIRONMENTAL PROTECTION AGENCY, Defendant.**

**No. C2–94–1258.**

United States District Court, S.D. Ohio, Eastern Division.

Aug. 6, 1997.

---

**1169**

John Spencely Marshall, Columbus, OH, for Plaintiff.

Jack Wilson Decker, James John Schubert, Robert Lee Griffin, David Jp. Katko, John B. Kahle, Pamela J. Vest, Ohio Atty. Gens., for Defendant.

## MEMORANDUM OPINION

GRAHAM, District Judge.

This is an action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 1211, *et seq.*, and the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §§ 791–794. Plaintiff contends that defendant violated these statutory provisions when it allegedly failed to accommodate his disability, a back injury, thereby occasioning plaintiff's resignation and constructive discharge.

This matter is before the court on the October 10, 1996 motion to dismiss filed by defendant Ohio Environmental Protection Agency. Defendant, an agency of the state of Ohio, argues that plaintiff's claims are barred by the Eleventh Amendment.

It is well established that the Eleventh Amendment prevents a federal court from entertaining a suit brought by a citizen against his own state. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). The Eleventh Amendment protects state agencies where the agency is an "arm or alter ego of the state." *Hall v. Medical College of Ohio,* 742 F.2d 299, 301 (6th Cir. 1984). The Eleventh Amendment bars suits against a state and its agencies unless the state has waived its sovereign immunity or Congress has overridden it. *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Whittington v. Milby,* 928 F.2d 188 (6th Cir.1991).

■ The state of Ohio has not clearly waived its sovereign immunity from suit in the case of claims brought under the ADA or the Rehabilitation Act. The state of Ohio has only consented to suit in the Ohio Court of Claims pursuant to Ohio Rev.Code § 2743.02. Under Article I, § 16 of the Ohio Constitution, only the Ohio General Assembly may waive Ohio's sovereign immunity through legislative action. *State of Ohio v. Madeline Marie Nursing Homes,* 694 F.2d 449, 460 (6th Cir.1982). Plaintiff points to no statutory enactment whereby the General Assembly has done so in ADA and Rehabilitation Act cases.

■ Plaintiff argues that defendant waived its sovereign immunity because it is an agency which receives funds from the federal government. However, the mere fact that the state participates in a program through which the federal government provides funding to the state is not sufficient to establish the state's consent to suit. *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 246–47, 105 S.Ct. 3142, 3149–50, 87 L.Ed.2d 171 (1985) (state did not waive Eleventh Amendment by receipt of funds under the Rehabilitation Act); *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The state can waive its sovereign immunity when it voluntarily participates in a program where Congress has conditioned participation in the program on the state's consent to suit in federal court. *Florida Dept. of Health & Rehabilitative Services v. Florida Nursing Home Assn.,* 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981); *Tennessee Dept. of Human Services v. United States Dept. of Education,* 979 F.2d 1162, 1166 (6th Cir.1992). This was not the case here. There has been no waiver of sovereign immunity by the defendant in this case.

Congress also has the authority in some cases to override the states' immunity under the Eleventh Amendment. In deciding whether Congress has effectively abrogated

a state's sovereign immunity, the court must determine: (1) whether Congress has unequivocally expressed its intent to abrogate immunity; and (2) whether Congress has acted pursuant to a valid exercise of power, that is, whether the law was passed pursuant to a constitutional provision which grants Congress the power to abrogate. *Seminole Tribe of Florida v. Florida*, 517 U.S. 609, ——— ———, 116 S.Ct. 1114, 1123–25, 134 L.Ed.2d 252 (1996).

The first prong of the *Seminole* test is clearly satisfied here. Title 42 U.S.C. § 2000d–7 provides that states shall not be immune under the Eleventh Amendment from suit in federal court for violations of the Rehabilitation Act under 29 U.S.C. § 794. Likewise, 42 U.S.C. § 12202 provides that states are not immune from suit under the ADA. Congress has plainly indicated its intent to abrogate the states' sovereign immunity from actions under the Rehabilitation Act and the ADA.

In regard to the second prong of the *Seminole* test, the only currently recognized authority for Congress to abrogate the states' sovereign immunity, as indicated in *Seminole*, 517 U.S. at ———, 116 S.Ct. at 1125, consists of Congress' enactment of legislation pursuant to its enforcement powers under § 5 of the Fourteenth Amendment of the United States Constitution. Section 5 of the Fourteenth Amendment provides that "Congress shall have power to enforce, by appropriate legislation, the provisions of this article." The test for determining whether legislation was properly enacted pursuant to Congress' powers under § 5 of the Fourteenth Amendment is whether the statute: (1) may be regarded as an enactment to enforce the Equal Protection Clause; (2) whether it is plainly adapted to that end; and (3) whether it is not prohibited by, but is consistent with, the letter and spirit of the constitution. *Katzenbach v. Morgan*, 384 U.S. 641, 651, 86 S.Ct. 1717, 1723–24, 16 L.Ed.2d 828 (1966); *Wilson–Jones v. Caviness*, 99 F.3d 203, 209 (6th Cir.1996).

In noting the *Katzenbach* factors, the Sixth Circuit in *Wilson–Jones*, 99 F.3d at 209, made the following observations:

It is clear to us that these three *Katzenbach* factors cannot be kept so permissive as to make them collapse into the "rationally related" test generally used for the enforcement clauses of other constitutional amendments. The Fourteenth Amendment contains rather specific constitutional goals, such as the elimination of race discrimination by state actors, and also more general goals, such as the guarantee to every citizen of equal protection of the laws. The general goal of equal protection of law encompasses every facet of a citizen's interactions with government. If we were to say that an act is valid if it is rationally related to achieving equal protection of the laws, then § 5 becomes a license to Congress to pass any sort of legislation whatsoever. In reviewing such legislation, we could only ask whether the statute was a rational means to make the system of laws more rational, and the answer would always be "yes."

On the other hand, it is equally clear that Congress has broad discretion to legislate to enforce the core promises of the Fourteenth Amendment. Specifically, the Supreme Court and our circuit have been extremely deferential when reviewing under Section 5 legislation passed to enforce the ban on race discrimination by a state, to prohibit ethnic and linguistic restrictions on voting, to remedy discriminatory practices in the hiring of public contractors, or to remedy gender discrimination by state employers.

(Footnote and citations omitted).

The provisions at issue here are the accommodation requirements of the ADA and the Rehabilitation Act. Under the ADA, discrimination based upon an individual's disability has been defined under 42 U.S.C. § 12112(b)(5)(A) and (B) to include:

(5)(A) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity; or

(B) denying employment opportunities to a job applicant or employee who is an

otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant[.]

This provision is made applicable to claims under the Rehabilitation Act through 29 U.S.C. § 794(d), which incorporates ADA standards for determining whether a violation of § 794 has occurred.

The term "reasonable accommodation" is defined in 42 U.S.C. § 12111(9) as including:

(A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

(B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

The instant case involves accommodations such as those listed in subdivision (B) above. Plaintiff alleges that defendant should have restructured his job or reassigned him to a vacant position.

The term "undue hardship" means an action requiring significant difficulty or expense when viewed in light of the nature and cost of the accommodation, the financial resources of the employer and the nature of the employer's business. 42 U.S.C. § 12111(10).

The first *Katzenbach* factor is whether the statute may be regarded as an enactment to enforce the Equal Protection Clause. "The simplest way to meet this requirement is for Congress to declare explicitly that the legislation is passed to enforce Fourteenth Amendment rights." *Wilson–Jones,* 99 F.3d at 210. In 42 U.S.C. § 12101(b)(4), Congress stated that one purpose of the ADA was "to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment ... in order to address the major areas of discrimination faced day-to-day by people with disabilities." This language indicates that in enacting the ADA, Congress

intended to utilize its enforcement powers under § 5 of the Fourteenth Amendment.

No such clear statement was made in regard to the Rehabilitation Act. The Supreme Court noted in *Welch v. Texas Dept. of Highways and Public Transp.,* 483 U.S. 468, 472 n. 2, 107 S.Ct. 2941, 2945 n. 2, 97 L.Ed.2d 389 (1987) that the Rehabilitation Act was passed pursuant to § 5 of the Fourteenth Amendment. However, this statement is dicta, and was supported solely by a citation to *Scanlon,* in which the question of whether Congress acted pursuant to § 5 in enacting the Rehabilitation Act was not contested or at issue.

However, courts have not required that Congress specifically refer to § 5 or the Fourteenth Amendment in the language of the statutory provisions in question. *EEOC v. Wyoming,* 460 U.S. 226, 243 n. 18, 103 S.Ct. 1054, 1064 n. 18, 75 L.Ed.2d 18 (1983); *Timmer v. Michigan Dept. of Commerce,* 104 F.3d 833 (6th Cir.1997); *Wilson–Jones,* 99 F.3d at 208. Rather, the Sixth Circuit has construed *Pennhurst State School & Hospital v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981) as requiring only that a court should not "quickly attribute" to Congress an unstated intent to act under § 5 of the Fourteenth Amendment. *Timmer,* 104 F.3d at 840 (quoting *Pennhurst,* 451 U.S. at 16, 101 S.Ct. at 1539). The relevant question is whether the court is able to discern some legislative purpose or factual predicate that supports that exercise of power. *EEOC v. Wyoming,* 460 U.S. at 243 n. 18, 103 S.Ct. at 1064 n. 18. It other words, where Congress "does not explicitly identify the source of its power as the Fourteenth Amendment, there must be something about the act connecting it to recognized Fourteenth Amendment aims." *Wilson–Jones,* 99 F.3d at 210.

Persons with disabilities are entitled to protection under the Equal Protection Clause of the Fourteenth Amendment. *City of Cleburne, Texas v. Cleburne Living Ctr.,* 473 U.S. 432, 446–47, 105 S.Ct. 3249, 3257–58, 87 L.Ed.2d 313 (1985). One stated purpose of the Rehabilitation Act is "to empower individuals with disabilities to maximize employment, economic self-sufficiency, independence, and inclusion and integration into

society, through ... the guarantee of equal opportunity[.]" 29 U.S.C. § 701(b)(1)(F).

Courts which have addressed the issue of whether the Rehabilitation Act may be regarded as an enactment to enforce the Equal Protection Clause have examined a number of factors, including legislative history, the findings and purposes behind the Rehabilitation Act contained in 29 U.S.C. § 701, and the similarity between the Rehabilitation Act and the ADA, and have concluded that Congress intended to act under § 5 of the Fourteenth Amendment in enacting the Rehabilitation Act. *See, e.g., Armstrong v. Wilson,* 942 F.Supp. 1252, 1262–63 (N.D.Cal.1996) (noting similarity between Rehabilitation Act and ADA); *Niece v. Fitzner,* 941 F.Supp. 1497, 1502 (E.D.Mich.1996) (noting legislative history indicating that 42 U.S.C. § 2000d–7 was enacted in response to indication in *Scanlon* that Congress could abrogate Eleventh Amendment under § 5); *Mayer v. University of Minnesota,* 940 F.Supp. 1474, 1478 (D.Minn.1996) (noting stated purposes of Rehabilitation Act); *Dept. of Educ., State of Hawaii v. Katherine D.,* 531 F.Supp. 517, 530 (D.Haw.1982), *aff'd in part, rev'd in part on other grounds,* 727 F.2d 809 (9th Cir.1983) (noting legislative history and purpose of statute).

The court concludes that Congress intended the ADA and the Rehabilitation Act to be enactments to enforce the Fourteenth Amendment.

The second *Katzenbach* factor is whether the legislation is "plainly adapted to that end," that is, "whether the means chosen by Congress fit the identified or hypothetical Fourteenth Amendment purpose." *Wilson–Jones,* 99 F.3d at 210. As the Supreme Court stated recently in *City of Boerne v. Flores,* —— U.S. ——, ——, 117 S.Ct. 2157, 2164, 138 L.Ed.2d 624 (1997), "[t]here must be a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end."

Congress has broad discretion under § 5 to determine the appropriate means for enforcing the equal protection guarantees of the Fourteenth Amendment. *Wilson–Jones,* 99 F.3d at 209. The enforcement powers of Congress under § 5 have been compared to Congress' powers under the Necessary and Proper Clause of the United States Constitution, Article I, § 8, cl. 18. *Katzenbach,* 384 U.S. at 650, 86 S.Ct. at 1723. It is not a requirement that the practice under review by Congress in itself violates the Fourteenth Amendment. *Id.* "Legislation which deters or remedies constitutional violations can fall within the sweep of Congress' enforcement power even if in the process it prohibits conduct which is not itself unconstitutional and intrudes into 'legislative spheres of autonomy previously reserved to the States.'" *Flores,* —— U.S. at ——, 117 S.Ct. at 2163 (quoting *Fitzpatrick v. Bitzer,* 427 U.S. 445, 455, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976)). Further, "[t]he power to 'enforce' may at times also include the power to define situations which *Congress* determines threaten principles of equality and to adopt prophylactic rules to deal with those situations." *City of Richmond v. J.A. Croson, Co.,* 488 U.S. 469, 490, 109 S.Ct. 706, 720, 102 L.Ed.2d 854 (1989) (emphasis in original). *See also Fullilove v. Klutznick,* 448 U.S. 448, 477, 100 S.Ct. 2758, 2774, 65 L.Ed.2d 902 (1980) (authority of Congress to legislate under § 5 extends to measures regulating state action that has a discriminatory impact perpetuating the effects of past discrimination.) In discussing the Civil War Amendments, the Supreme Court has noted that an act is a valid exercise of the enforcement power if it is "rationally related" to the amendment's subject matter. *South Carolina v. Katzenbach,* 383 U.S. 301, 324, 86 S.Ct. 803, 816, 15 L.Ed.2d 769 (1966).

The scope of the Equal Protection Clause is not without limits. The Supreme Court stated in *Oregon v. Mitchell,* 400 U.S. 112, 126–27, 91 S.Ct. 260, 265–66, 27 L.Ed.2d 272 (1970):

While this Court has recognized that the Equal Protection Clause of the Fourteenth Amendment in some instances protects against discriminations other than those on account of race ... [t]he Fourteenth Amendment was surely not intended to make every discrimination between groups of people a constitutional denial of equal protection. Nor was the Enforcement Clause of the Fourteenth Amendment intended to permit Congress to prohibit ev-

ery discrimination between groups of people.

(Citations omitted).

Congress' enforcement authority under § 5 is "remedial and preventive" in nature. *Flores,* —— U.S. at ——, 117 S.Ct. at 2170. Section 5 grants Congress "the power to make the substantive constitutional provisions against the States effective" but does not award Congress the authority to substantively change the nature of constitutional rights. *Id.* at ——–——, 117 S.Ct. at 2163–66. The *Flores* Court further stated that "[t]he power to 'legislate generally upon' life, liberty, and property, as opposed to the 'power to provide modes of redress' against offensive state action, [is] 'repugnant' to the Constitution." *Id.* at ——, 117 S.Ct. at 2166 (quoting *Civil Rights Cases,* 109 U.S. 3, 15, 3 S.Ct. 18, 24, 27 L.Ed. 835 (1883)).

The Supreme Court in *Flores* determined that Congress had exceeded its authority under § 5 in enacting the Religious Freedom Restoration Act of 1993 ("RFRA"). In reaching this conclusion, the Court noted that the evidence before Congress consisted of laws of general applicability which placed incidental burdens on religion. *Id.* at ——–——, 117 S.Ct. at 2168–70. The Court concluded that the heavy burdens imposed upon the states by RFRA's use of the compelling governmental interest/least restrictive means test, including extensive litigation and the curtailing of the states' traditional regulatory powers, "far exceed any pattern or practice of unconstitutional conduct under the Free Exercise Clause[.]" *Id.* at ——, 117 S.Ct. at 2171.

Almost every court which has addressed the issue to date has concluded that the ADA and the Rehabilitation Act are statutory schemes which are rationally related to the Equal Protection Clause and plainly adapted to the enforcement to that Clause. *See, e.g., Crawford v. Indiana Dept. of Corrections,* 115 F.3d 481 (7th Cir.1997) (ADA within Congress' powers under § 5); *Autio v. State of Minnesota,* 968 F.Supp. 1366 (D.Minn. 1997); *Armstrong,* 942 F.Supp. at 1261–62; *Niece,* 941 F.Supp. at 1504; *Williams v. Ohio Dept. of Mental Health,* 960 F.Supp. 1276 (S.D.Ohio 1997) (Sargus, J.).

This court has found only one decision in which a court concluded that the accommodation provisions of the ADA were not rationally related to any right under the Fourteenth Amendment. In *Pierce v. King,* 918 F.Supp. 932 (E.D.N.C.1996), the court faced the issue of whether the ADA was applicable to the work assignments of handicapped prisoners confined in a state prison facility. Judge Boyle noted, *Id.* at 940, that "it is unclear what Fourteenth Amendment right, if any, is vindicated by the Act." The court, *Id.,* went on to comment:

The Fourteenth Amendment has traditionally been understood as protecting individuals from state action that would infringe upon individual liberties. The ADA, however, creates positive rights to entitlement against other individuals and state governments. Although framed in terms of addressing discrimination, the Act's operative remedial provisions demand not equal treatment, but special treatment tailored to the claimed disability. In this respect, the ADA differs radically from traditional anti-discrimination laws, such as Title VII, which seek only a state of affairs where individuals are treated in a neutral manner without regard to race, sex, age, etc. Unlike traditional anti-discrimination laws, the ADA *demands* entitlement in order to achieve its goals. This the Fourteenth Amendment cannot authorize.

(Footnote omitted, emphasis in original).

In this court's view, Judge Boyle's opinion in *Pierce* raises serious concerns. In enacting the ADA and the Rehabilitation Act, Congress purportedly sought to remedy discrimination against the disabled. To the extent that these provisions prohibit intentional discrimination based on a person's disability in hiring, termination and other conditions of employment, these provisions meet that goal.

In contrast, the accommodation provisions of the ADA and the Rehabilitation Act demand unequal treatment for disabled employees, and in that respect are unique among other statutory provisions designed to combat discrimination. As the court noted in *Riel v. Electronic Data Systems Corp.,* 99 F.3d 678, 681 (5th Cir.1996):

The ADA mandate that employers must accommodate sets it apart from most other anti-discrimination legislation. Race discrimination statutes mandate equality of treatment, in most cases prohibiting consideration of race in any employment decision. By contrast, an employer who treats a disabled employee the same as a non-disabled employee may violate the ADA. By requiring reasonable accommodation, the ADA shifts away from similar treatment to different treatment of the disabled by accommodating their disabilities.

The accommodation provisions also extend beyond the reach of many typical affirmative action programs. For example, a court may require that a public employer reserve a certain number of positions in a police training class for minorities to redress past discrimination, but such employers are usually not required to provide the minority recruits with special equipment necessary to perform the job, such as uniforms, where non-minorities are not furnished such equipment at employer expense. The accommodation provisions may require an employer to provide special equipment or other benefits, such as changes in working arrangements, to which non-disabled employees are not entitled.

"Nothing in the United States Constitution requires [an employer] to accommodate [a disabled person's] condition." *Welsh v. City of Tulsa, Oklahoma,* 977 F.2d 1415, 1420 (10th Cir.1992). Thus, in enacting the accommodation provisions, Congress created a substantive right to preferential treatment where no such right previously existed under the Equal Protection Clause.

The accommodation provisions require no congruity between the obligations of the state employer under the accommodation provisions and the injury of discrimination they are supposed to prevent. For example, it is difficult to understand, in light of traditional notions of what constitutes discriminatory animus, how the failure to modify a building constructed fifty years earlier can constitute discrimination when the original builders had no intent whatsoever of impeding the disabled from gaining access to the building. Yet, under the ADA, such a failure to accommodate was included by Congress within the statutory definition of discrimination. *See* 42 U.S.C. § 12112(a)(5). In spite of Congress' efforts to inject an element of discriminatory animus into the situation by defining the failure to accommodate as "discrimination," accommodation is required regardless of whether the employer harbors any discriminatory intent or bias due to the employee's disability.

The accommodation provisions are not limited to the prevention of discrimination, but rather apply where the sole impediment to the disabled individual's ability to perform the job is the individual's disability, and where the employer is innocent of any discriminatory animus. Since they permit a remedy even where there is no injury, they are disproportionate. The accommodation provisions will place a serious financial burden upon the states.

Reasonable accommodations include: 1) accommodations that are required to ensure equal opportunity in the application process; 2) accommodations that enable the employer's employees with disabilities to perform the essential functions of the position held or desired; and 3) accommodations that enable the employer's employees with disabilities to enjoy equal benefits and privileges of employment as are enjoyed by employees without disabilities. 29 C.F.R. § 1630.2(*o*). This burden may include the cost of building modifications, the purchase of equipment or devices, and the hiring of qualified readers or interpreters. *See* 42 U.S.C. § 12111(9). Other examples of reasonable accommodations envisioned under the regulations include providing transportation, parking spaces, or a personal assistant.

The ADA and the Rehabilitation Act require only "reasonable" accommodations, and it is a defense to an action under those provisions if the accommodation would impose an undue hardship on the operation of the business of the state entity. 42 U.S.C. § 12112(a)(5). The term "undue hardship" means an action requiring significant difficulty or expense, when considered in light of factors such as the nature and cost of the accommodation needed, the financial resources available and the nature and circumstances of the state entity. 42 U.S.C. § 12111(10). Under this rather nebulous standard it is impossible to predict the mag-

nitude of difficulty or expense which might be required of a state employer. Indeed, as a practical matter, it is questionable whether a state would be able to successfully plead undue hardship because the state could always raise taxes to finance any accommodation that it must make to disabled employees. *See Vande Zande v. Wisconsin Dept. of Admin.,* 44 F.3d 538, 542 (7th Cir.1995).

The accommodation provisions also represent a cost to the states in the form of a substantial litigation burden, both at the administrative and judicial levels. Congress found that as of 1990 there were approximately forty-three million Americans having one or more physical or mental disabilities, and that this number was growing. It is safe to assume that a comparable percentage of state employees also suffer from some form of disability, and that there is a likelihood that disputes over the accommodation of these disabilities will result in litigation.

The accommodation provisions are in essence cost-shifting provisions, the product of a determination by Congress that, regardless of whether discrimination is present, employers, not disabled individuals, are better equipped financially to incur the costs of integrating disabled employees with special needs into the workplace.

While this court certainly has no quarrel with the laudable goal of protecting the equal protection interests of disabled employees and promoting their productive participation in the workforce, the court is troubled by the concept that Congress could transfer the costs of any social program to the states by the simple and circular expedient of defining as discrimination the failure on the part of the state employer to provide benefits to members of special interest groups. For example, Congress could conceivably conclude that minorities who are unable to attend college due to their financial circumstances are disadvantaged when applying for state government jobs, and could require the states to provide these individuals with scholarships to state universities by simply defining the failure of the states to do so as race discrimination, even though race discrimination was not a factor in any employment decision. Under this scenario, the real villain is the financial situation of the job applicants, a factor over which the states have no con-

trol, not employment discrimination based upon an impermissible consideration. Likewise, the ADA accommodation provisions require the state employer to afford benefits to the disabled employee which are not available to other employees under the guise of preventing discrimination, when the real impediments to the employee are the disability and the costs of accommodating the disability.

The court concludes that this portion of the *Katzenbach* test, that is, whether there is a "congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end" *Flores,* —— U.S. at ——, 117 S.Ct. at 2176, has not been met.

Turning to the third *Katzenbach* factor referred to in *Wilson–Jones,* whether the legislation is consistent with the negative constraints of the Constitution, the court notes that the accommodation provisions require the states to provide various benefits for disabled employees to which non-disabled employees are not entitled. This raises potential issues concerning the equal protection rights of non-disabled employees.

Defendant argues that the accommodation provisions interfere with the state's sovereign powers to govern itself and to choose its own employees. The validity of this argument is tied at least to some extent to the first *Katzenbach* factor, that being whether the enactment may be regarded as one to enforce the Equal Protection Clause. In *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), the Supreme Court held that the extension of the employment discrimination prohibitions of Title VII of the Civil Rights Act of 1964 to the states was an appropriate method of enforcing the Fourteenth Amendment. The Court noted, *Id.* at 456, 96 S.Ct. at 2671, that Eleventh Amendment sovereignty is limited by the enforcement provisions of § 5, and that Congress, in determining what constitutes "appropriate legislation" for the purpose of enforcing the provisions of the Fourteenth Amendment, may provide for private suits against states which are constitutionally impermissible in other contexts. *See also City of Rome v. United States,* 446 U.S. 156, 100 S.Ct. 1548, 64 L.Ed.2d 119 (1980) (principles

of federalism that might otherwise be an obstacle to congressional authority are necessarily overridden by the power to enforce the Civil War Amendments by appropriate legislation).

However, Congress' authority to enact legislation which impacts on a state's dealings with its own employees is not without limitations. In *Gregory v. Ashcroft*, 501 U.S. 452, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991), the Court held that state court judges were not included in the class protected under the Age Discrimination in Employment Act, noting, *Id.* at 468, 111 S.Ct. at 2404–05, that "this Court has never held that the Amendment may be applied in complete disregard for a State's constitutional powers." The Court went on to observe that "the Fourteenth Amendment does not override all principles of federalism."

Chief Judge Posner, writing for the Seventh Circuit in *Sasnett v. Sullivan*, 91 F.3d 1018, 1022 (7th Cir.1996), recently expressed concerns over congressional action purportedly taken under § 5 of the Fourteenth Amendment which implicates principles of state sovereignty:

> We are mindful that by progressively incorporating almost the entire Bill of Rights, expansively interpreted, into the due process clause of the Fourteenth Amendment, the Supreme Court has greatly enlarged the reach of section 5, ... and we share the state's anxiety lest the clause swallow up the remaining powers of state government. Suppose that Congress, concerned that many policemen flout Fourth Amendment rights, which are among those incorporated in the Fourteenth Amendment, passed a law requiring every state and local government to provide two weeks each year of instruction to all its law enforcement officers in the principles of the Fourth Amendment. Or forbade these governments to hire police officers who had ever been found to have violated a suspect's Fourth Amendment rights. Or required high schools to offer instruction in the law of search and seizure. These hypothetical cases and others that could be put suggest the necessity of imposing limits on the scope of the enforcement clause beyond the obvious one that it may not be used to infringe other constitutional rights. We think that in addition it may not be employed beyond reasonable limits fixed with due regard for the autonomy and responsibility of state and local government. (Citations omitted).

The accommodation provisions of the ADA and the Rehabilitation Act will impose a financial burden on state employers. In addition, the accommodation provisions also impact upon the authority of the state to define the job descriptions for each position and the qualifications needed to perform the duties required in each position. Congress has not only created substantive rights on the part of the disabled, but has charged the states as employers with the responsibility of bearing the costs of these newly-created entitlements. These provisions constitute a substantial infringement on a traditional area of state sovereignty which is not counterbalanced by the goal of preventing or remedying constitutional violations.

After reviewing the relevant precedents and considering the *Katzenbach* factors, the court concludes that the ADA and Rehabilitation Act accommodation provisions, at least insofar as "accommodation" is defined in 42 U.S.C. § 12111(9)(B), are not a valid exercise of Congress' enforcement power under § 5 of the Fourteenth Amendment. Congress has not legally abrogated the sovereign immunity of states from suit by private persons brought under the ADA and the Rehabilitation Act, and defendant's motion to dismiss under the Eleventh Amendment is granted.

The clerk shall enter final judgment for defendant dismissing this action with prejudice at plaintiff's costs.

It is so ORDERED.