Steven A. MARTIN, Plaintiff,

v.

STATE OF KANSAS, Defendant.

No. 97–2025–JWL.

United States District Court, D. Kansas.

Sept. 30, 1997.

Kirk W. Lowry, Palmer & Lowry, Topeka, KS, for Steven A. Martin.

Lisa A. Mendoza, Edward F. Britton, Jr., Kansas Dept. of Corrections, Topeka, KS, for Kansas Dept. of Corrections, State of Kansas.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

In this action, plaintiff has brought claims for damages against defendant State of Kansas, his former employer, pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101–12213. Defendant terminated plaintiff from his position as a correctional officer at Lansing Correctional Facility. The matter is presently before the court on defendant's motion to dismiss the action based on Eleventh Amendment immunity (Doc. 17) and defendant's motion to strike or to dismiss for failure to exhaust administrative remedies (Doc. 21). For the reasons set forth below, the court denies both motions.

### I. Eleventh Amendment Immunity (Doc. 17)

■ Defendant argues that plaintiff's claims under the ADA should be dismissed because it is protected from suit by the Eleventh Amendment to the Constitution.[1] The Eleventh Amendment bars suits against a State in federal court by its own citizens as well as those by citizens of other States. *Port Authority Trans–Hudson Corp. v. Feeney,* 495 U.S. 299, 304, 110 S.Ct. 1868, 1872, 109 L.Ed.2d 264 (1990). This sovereign immunity is not absolute, however; a State may consent to suit or Congress may abrogate the States' immunity. *Id.* Plaintiff does not contend that the State of Kansas has waived its immunity here. Thus, the only question is whether Congress validly abrogated the States' immunity in the ADA.

Last year, in *Seminole Tribe of Florida v. Florida,* 517 U.S. 609, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), the Supreme Court set forth a two-part test for determining whether Congress has abrogated the States' Eleventh Amendment immunity: the court must determine "first, whether Congress has unequivocally expressed its intent to abrogate the immunity, and second, whether Congress has acted pursuant to a valid exercise of power." *Id.* at ——, 116 S.Ct. at 1123 (citations omitted). The court answers the first question in the affirmative here. The ADA provides: "A State shall not be immune under the eleventh

---

1. Defendant also contends that prison employment is not subject to the ADA. Because defendant raised this issue only in its reply brief, the court will not address it.

amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter." 42 U.S.C. § 12202. By this provision, Congress has unequivocally expressed its intent to abrogate the States' sovereign immunity. Defendant's motion therefore turns on whether Congress acted pursuant to valid exercise of power in enacting section 12202.

Before last year, the Supreme Court had recognized only the Constitution's Commerce Clause and Section 5 of the Fourteenth Amendment as proper bases for Congress's abrogation of States' sovereign immunity. *Seminole Tribe,* 517 U.S. at ——, 116 S.Ct. at 1125. In *Seminole Tribe,* however, the Court held that Congress could not use Article I of the Constitution to override the Eleventh Amendment, thereby leaving only the Fourteenth Amendment as a basis for abrogation. *Id.* at ——, 116 S.Ct. at 1132. Defendant asserts that the ADA's abrogation provision is invalid because it was enacted pursuant to the Commerce Clause. Congress clearly and explicitly invoked its "power to enforce the fourteenth amendment" in enacting the ADA, however. 42 U.S.C. § 12101(b)(4). Accordingly, unless Congress exceeded its enforcement power under the Fourteenth Amendment, Congress properly abrogated the States' Eleventh Amendment immunity with respect to suits under the ADA.

■ Section 5 of the Fourteenth Amendment provides that "Congress shall have power to enforce, by appropriate legislation, the provisions" of the Amendment, including the Equal Protection Clause. U.S. Const. amend. XIV, § 5. The Supreme Court has defined the Equal Protection Clause to mean that "no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). Section 5 gives Congress broad power to enforce that direction: "Correctly viewed, § 5 is a positive grant of legislative power authorizing Congress to exercise its discre-

tion in determining whether and what legislation is needed to secure the guarantees of the Fourteenth Amendment." *Katzenbach v. Morgan,* 384 U.S. 641, 651, 86 S.Ct. 1717, 1723–1724, 16 L.Ed.2d 828 (1966). In *Katzenbach,* the Supreme Court stated that, to measure whether a statute constitutes "appropriate legislation" under Section 5 to enforce the Equal Protection Clause, a court must decide "whether [the statute] may be regarded as an enactment to enforce the Equal Protection Clause, whether it is plainly adapted to that end and whether it is not prohibited by but is consistent with the letter and spirit of the constitution." *Id.* Last term, in *City of Boerne v. Flores,* —— U.S. ——, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), the Court enunciated the following standard: "There must be a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *Id.* at ——, 117 S.Ct. at 2159.

Defendant argues that the ADA fails to meet these standards and that Congress therefore exceeded its power under Section 5 in enacting it. A great majority of the courts that have decided this issue since the Supreme Court's decision in *Seminole Tribe,* including the Seventh Circuit and the Ninth Circuit, have concluded that the ADA represents a valid exercise of Congress's power under Section 5 of the Fourteenth Amendment. *See Clark v. State of Calif.,* 123 F.3d 1267, 1270–1271 (9th Cir.1997); *Crawford v. Indiana Dept. of Corrections,* 115 F.3d 481, 487 (7th Cir.1997) (Posner, J.); *Autio v. State of Minn.,* 968 F.Supp. 1366, 1369–72 (D.Minn.1997); *Williams v. Ohio Dept. of Mental Health,* 960 F.Supp. 1276, 1280–83 (S.D.Ohio 1997); *Mayer v. University of Minn.,* 940 F.Supp. 1474, 1477–80 (D.Minn. 1996); *Niece v. Fitzner,* 941 F.Supp. 1497, 1503–04 (E.D.Mich.1996); *Armstrong v. Wilson,* 942 F.Supp. 1252, 1260–62 (N.D.Cal. 1996), *aff'd on other grounds,* 124 F.3d 1019 (9th Cir.1997). The court is aware of only one opinion since *Seminole Tribe* reaching the opposite conclusion. *See Nihiser v. Ohio Environmental Protection Agency,* 979 F.Supp. 1168, 1170–76 (S.D.Ohio 1997); *see*

*also Pierce v. King*, 918 F.Supp. 932, 940 (E.D.N.C.1996) (dicta, decided before *Seminole Tribe* ).

Congress clearly enacted the ADA to combat discrimination against the disabled. In the statute's first section, Congress made numerous findings concerning disability discrimination, including the following findings: that such discrimination is a "serious and pervasive social problem," occurring in such "critical areas" as employment, housing, public accommodations, education, transportation, communication, and access to public services; that this discrimination includes "outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, [and] failure to make modifications to existing facilities and practices;" and that the disabled occupy an "inferior status in our society, and are severely disadvantaged socially, vocationally, economically, and educationally." 42 U.S.C. § 12101(a). Congress's express purposes in enacting the ADA included providing "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities," and providing "clear, strong, consistent, enforceable standards for addressing" such discrimination. *Id.* § 12101(b).

■ Defendant suggests that the ADA is not a proper exercise of Congress's Section 5 power because the disabled do not comprise a suspect class under Equal Protection jurisprudence and discrimination against them is not judged under a heightened standard of review. *See City of Cleburne*, 473 U.S. at 442–46, 105 S.Ct. at 3255–58 (applying rational basis standard to government action affecting mentally retarded). The court disagrees. In *City of Cleburne*, the Supreme Court stated that its refusal to employ a heightened standard of review with respect to a particular group "does not leave them entirely unprotected from invidious discrimination." *Id.* at 446, 105 S.Ct. at 3257–58. In that case, the Court applied a rational basis standard in concluding that a zoning decision involving the mentally retarded violated the Equal Protection Clause. *Id.* at 450, 105 S.Ct. at 3259. Accordingly, even non-suspect classes are entitled to equal protection of the laws under the Fourteenth Amendment. In addition, the Court explained the judicial standards of review as follows:

> Section 5 of the Amendment empowers Congress to enforce this mandate [of the Equal Protection Clause], but absent controlling congressional direction, the courts have themselves devised standards for determining the validity of state legislation or other official action that is challenged as denying equal protection.

*Id.* at 439, 105 S.Ct. at 3254. In this case, Congress, in enacting the ADA, has provided the direction absent in *City of Cleburne*, thus making distinctions between the judicial standards of review meaningless. The court concludes that Congress's power to enforce the Equal Protection Clause does not depend on the applicability of a heightened judicial standard of review. The Equal Protection Clause protects the disabled from discrimination; therefore, Congress may act to remedy such discrimination under its Section 5 enforcement power. *See Williams*, 960 F.Supp. at 1281–82; *Mayer*, 940 F.Supp. at 1479.[2]

Defendant's primary argument is that Congress has exceeded its power to enforce the Fourteenth Amendment because the ADA goes beyond prohibiting discrimination. Defendant contends that the ADA's requirement that reasonable accommodations be made for the disabled confers special treatment upon that group.[3] Therefore, in defen-

---

**2.** In this way, the ADA is like the Age Discrimination in Employment Act (ADEA), which the Tenth Circuit has deemed a valid exercise of Congress's power under Section 5 of the Fourteenth Amendment. *See Hurd v. Pittsburg State Univ.*, 109 F.3d 1540, 1546 (10th Cir.1997); *see also Crawford*, 115 F.3d at 487 ("In creating a remedy against such discrimination [against the disabled], Congress was acting well within its powers under section 5, as the courts have concluded with respect to the (ADEA), which is similar to the ADA in forbidding a form of discrimination re-

mote from the contemplation of the framers of the Fourteenth Amendment.").

**3.** Defendant states in its motion and opening brief that it seeks to dismiss plaintiff's "reasonable accommodation claims", and it states in the brief that it does not take issue with the ADA's anti-discrimination provisions. Defendant explains in its reply brief, however, that because the ADA defines discrimination in terms of the failure to make reasonable accommodation, its motion implicates plaintiff's claim that he was

dant's view, the ADA is unlike other anti-discrimination statutes, such as Title VII, which demand equal treatment.

Defendant relies on the following language from *Pierce* :

> The Fourteenth Amendment has traditionally been understood as protecting individuals from state action that would infringe upon individual liberties. The ADA, however, creates positive rights to entitlement against other individuals and state governments. Although framed in terms of addressing discrimination, the Act's operative remedial provisions demand not equal treatment, but special treatment tailored to the claimed disability. In this respect, the ADA differs radically from traditional anti-discrimination laws, such as Title VII, which seek only a state of affairs where individuals are treated in a neutral manner without regard to race, sex, age, etc. Unlike traditional anti-discrimination laws, the ADA *demands* entitlement in order to achieve its goals. This the Fourteenth Amendment cannot authorize.

*Pierce*, 918 F.Supp. at 940 (footnote omitted). The court notes, however, that in *Pierce* the court was not addressing the reach of the Fourteenth Amendment for purposes of sovereign immunity, but merely held that the ADA did not apply to protect prisoners. *Id.* *Pierce* was also decided before the Supreme Court enunciated its two-part test in *Seminole Tribe.*

Defendant also cites the recent opinion in *Nihiser,* in which the court dismissed ADA claims against a state agency on the basis of Eleventh Amendment immunity. There, the court concluded that the statute went too far in affording the disabled special treatment. *Nihiser,* 979 F.Supp. at 1173–74. The court also pointed to the financial burdens imposed on States that must meet affirmative obligations under the ADA. *Id.* at 1174–75.

■ The court believes that the *Pierce* and *Nihiser* courts have ignored the guidance provided by the Supreme Court on this issue. It is true that Congress's Section 5

power is not unlimited; Congress may only enforce the Fourteenth Amendment's restrictions, not decree the substance of them. *City of Boerne,* —— U.S. at ——, 117 S.Ct. at 2164. Nonetheless, the Supreme Court has made clear that Congress may properly prohibit constitutional as well as unconstitutional action in enforcing the Fourteenth Amendment through Section 5:

> Legislation which deters or remedies constitutional violations can fall within the sweep of Congress' enforcement power even if in the process it prohibits conduct which is not itself unconstitutional and intrudes into legislative spheres of autonomy previously reserved to the States.

*Id.* at ——, 117 S.Ct. at 2163; *see also Katzenbach,* 384 U.S. at 648, 86 S.Ct. at 1722 (Section 5 does not require a judicial determination that the state action violates the Fourteenth Amendment). "The power to 'enforce' may at times also include the power to define situations which *Congress* determines threatens principles of equality and to adopt *prophylactic* rules to deal with those situations." *City of Richmond v. J.A. Croson Co.,* 488 U.S. 469, 490, 109 S.Ct. 706, 720, 102 L.Ed.2d 854 (1989) (second emphasis added) (citing *Katzenbach,* 384 U.S. at 651, 86 S.Ct. at 1723). It is also apparent that Congress may place affirmative obligations on the States in acting under Section 5, if necessary for the enforcement of the Equal Protection Clause. *See City of Boerne,* —— U.S. at ——, 117 S.Ct. at 2163 (noting that the Court has upheld measures under Section 5 "despite the burdens those measures placed on the States").

The court concludes that Congress validly exercised its enforcement power in abrogating the States' immunity with respect to the ADA. The statute does not elevate the disabled to a status above others; rather, the reasonable accommodation requirement and other affirmative obligations allow the disabled to achieve equal status. The court's position is ably reflected in *Armstrong* :

> Rectifying discrimination often has taken the form of the prohibition of action that is discriminatory. Perhaps, as Defen-

---

terminated because of his disability. The court will thus treat defendant's motion as one to dis-

miss all of plaintiff's claims except his claim of prohibited medical inquiry.

dants argue, this is the traditional manner in which legislation under the Fourteenth Amendment has been framed. However, eliminating discrimination may require affirmative relief.

The goal of the ADA, to eliminate discrimination against an identifiable group of individuals, is a proper invocation of the Equal Protection Clause. The practical effect of the ADA will be to eliminate barriers against entry into physical structures, into ongoing programs and services, and into the mainstream of society itself for many individuals with disabilities. While this may require affirmative measures ... to insure inclusion of those who are now excluded from the mainstream ..., the requirement of such measures does not exceed the authority granted to Congress under § 5 of the Fourteenth Amendment.

*Armstrong,* 942 F.Supp. at 1261–62 (citations omitted). The affirmative obligations imposed by the ADA do not create unfair entitlements for the disabled, but instead address situations that are inherently discriminatory. *See Crawford,* 115 F.3d at 486 ("The Americans with Disabilities Act was cast in terms not of subsidizing an interest group but of eliminating a form of discrimination that Congress considered unfair and even odious."); *Autio,* 968 F.Supp. at 1370 ("While the Act's mandates impose requirements upon the States that impact a range of official conduct, its effect is limited to protecting persons with disabilities from arbitrary discrimination."). As the *Autio* court noted with respect to this issue, "[s]ometimes the grossest discrimination can lie in treating things that are different as though they were exactly alike." *Autio,* 968 F.Supp. at 1372 (quoting *Jenness v. Fortson,* 403 U.S. 431, 442, 91 S.Ct. 1970, 1976, 29 L.Ed.2d 554 (1971)). The ADA recognizes that treating the disabled differently is often necessary to remedy discrimination against them.[4]

In sum, the court concludes that the provisions of the ADA are congruent and propor-

tionate to the disability discrimination that it addresses, and are plainly adapted to the elimination of such discrimination.

Finally, defendant argues that the ADA is inconsistent with the Constitution because it invades the States' sovereignty. Defendant contends that operating prisons represents a core, traditional State function that should be immune from federal requirements. Defendant notes that the Supreme Court's recent rulings have favored the States over the federal government, and it urges the court to follow that trend here.

The court rejects this argument. Section 5 of the Fourteenth Amendment to the Constitution limits the States' sovereignty. "[T]he Fourteenth Amendment, by expanding federal power at the expense of state autonomy, [has] fundamentally altered the balance of state and federal power struck by the Constitution." *Seminole Tribe,* 517 U.S. at ——, 116 S.Ct. at 1125 (citing *Fitzpatrick v. Bitzer,* 427 U.S. 445, 455, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976)). Defendant notes that the Supreme Court stressed the concept of State sovereignty in invalidating the Religious Freedom Restoration Act in *City of Boerne;* in that case, however, the Court repeated that legislation may fall within Section 5 even if it "intrudes into legislative spheres of autonomy previously reserved to the States." *City of Boerne,* —— U.S. at ——, 117 S.Ct. at 2163.

Moreover, the court declines defendant's invitation to define Congress's power under Section 5 by reference to the type of State function at issue. The tests set forth by the Supreme Court do not include such an inquiry, and this court will not draw lines in the manner urged by defendant without Supreme Court or Tenth Circuit direction to that effect. Finally, the court will not base its decision in this case on predictions concerning jurisprudential and philosophical leanings and trends in the Supreme Court. The Court has properly confined its analysis to existing precedent.

---

4. For the same reason, the court rejects defendant's argument that the ADA essentially discriminates against the non-disabled and is therefore not consistent with the letter and spirit of the Constitution.

■ The court concludes that Congress abrogated the States' immunity with respect to the ADA pursuant to a valid exercise of its power under Section 5 of the Fourteenth Amendment. Accordingly, the court denies defendant's motion to dismiss based on Eleventh Amendment immunity.

## II. Exhaustion of Administrative Remedies (Doc. 21)

Defendant has also moved to strike portions of the complaint or to dismiss the action for failure to exhaust administrative remedies. In the charge he filed with the Equal Employment Opportunity Commission (EEOC), plaintiff alleged discrimination by defendant based on his "permanent, chronic arthritic condition" in his right knee, a disability that prevented him from running, climbing stairs continuously, or standing for long periods of time. Plaintiff claimed that defendant terminated him rather than allow him to work in a single tower at the correctional facility. In his amended complaint, however, plaintiff describes the alleged disability as a "tight lateral ligament in his right knee." Defendant argues that because the EEOC charge did not contain a complaint of discrimination based on a "tight lateral ligament," plaintiff has not satisfied the exhaustion requirement with respect to such claim.

■ The ADA incorporates the procedures of Title VII, including procedures relating to administrative remedies. 42 U.S.C. § 12117(a); *Schmitt v. Beverly Health & Rehabilitation Servs.*, 962 F.Supp. 1379, 1383 (D.Kan.1997). Exhaustion of administrative remedies is a jurisdictional prerequisite to suit. *See Jones v. Runyon*, 91 F.3d 1398, 1399, 1399 n. 1 (10th Cir.1996) (Title VII action), *cert. denied*, —— U.S. ——, 117 S.Ct. 1243, 137 L.Ed.2d 326 (1997).

There are two purposes behind the requirement for administrative exhaustion in discrimination cases: 1) to give notice of the alleged violation to the charged party; and 2) to give the EEOC an opportunity to conciliate the claim, which effectuates [the

statute's] goal of securing voluntary compliance.

*Ingels v. Thiokol Corp.*, 42 F.3d 616, 625 (10th Cir.1994).

■ Based on the change in the description of plaintiff's disability, defendant argues that it is entitled to relief because the claims raised in the complaint were not raised in the EEOC charge. "[W]hen an employee seeks judicial relief for incidents not listed in his original charge to the EEOC, the judicial complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge. . . ." *Brown v. Hartshorne Pub. Sch. Dist. # 1*, 864 F.2d 680, 682 (10th Cir. 1988). "[C]onsideration of complaints not expressly included in an EEOC charge is appropriate where the conduct alleged would fall within the scope of an EEOC investigation which would reasonably grow out of the charge actually made." *Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1416 n. 7 (10th Cir.1993). The EEOC charge and the judicial complaint must at least describe the same conduct and implicate the same individuals. *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir.1994) (citing *Allen v. Denver Pub. Sch. Bd.*, 928 F.2d 978, 984 (10th Cir.1991)).

Defendant asserts that the two claims are not sufficiently close because there are vast medical differences between arthritis and a tight ligament with respect to the conditions' severity and permanence. Defendant also argues that the EEOC charge did not give it notice of any alleged discrimination based on a tight ligament and that it was therefore deprived of an opportunity to remedy any discriminatory situation.[5]

■ The court concludes that plaintiff may pursue the claims raised in his amended complaint. Such claims are reasonably related to the claims made in the EEOC charge. In both cases, plaintiff alleged that defendant failed to accommodate an impairment in his right knee that prevented certain physical

---

5. Defendant also contends that plaintiff cannot show that it ever had notice of a ligament impairment and that such impairment does not constitute a disability under the ADA. Such contentions do not bear on whether plaintiff met his exhaustion requirement here, however, and are more properly addressed in a motion for summary judgment.

activity, and that defendant discriminated against him on that basis. The essence of that allegation, including the individuals involved and the manner in which defendant allegedly failed to accommodate plaintiff's physical limitations, is not affected by the particular medical cause of the impairment, which would no doubt come to light in the course of an EEOC investigation. Moreover, because of that fact, the exhaustion requirement's purposes of notice to defendant and an opportunity for conciliation are not undermined by allowing plaintiff's claims to proceed. Finally, defendant does not suffer any undue prejudice here because the discovery process allows it to investigate the medical details.

The case is easily distinguished from this court's decision in *Moore v. City of Overland Park*, 950 F.Supp. 1081 (D.Kan.1996). There the court held that allegations of discrimination based on nicotine addiction and a central nervous disorder raised in a judicial complaint were barred because they were not sufficiently related to a claim of discrimination based on diabetes raised in the EEOC charge. *Id.* at 1086. Those conditions represent completely distinct impairments. Here, in both the EEOC charge and the amended complaint, plaintiff alleged the same failure to accommodate the same impairment—a right knee impairment that prevented plaintiff's running, climbing, and standing.

The court concludes that plaintiff's ADA claims are reasonably related to the allegations in his EEOC charge. Therefore, plaintiff has satisfied his exhaustion requirement, and defendant's motion is denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion to dismiss based on Eleventh Amendment immunity (Doc. 17) is denied.

**IT IS FURTHER ORDERED THAT** defendant's motion to strike or to dismiss based on the failure to exhaust administrative remedies (Doc. 21) is denied.

**IT IS SO ORDERED.**