**Phyllis PEASE, Plaintiff,**

v.

**UNIVERSITY OF CINCINNATI MEDICAL CENTER, Defendant.**

**No. C–1–96–167.**

United States District Court, S.D. Ohio, Western Division.

April 17, 1998.

---

Mark Joseph Byrne, Jacobs, Kleinman, Seibel & McNally, Cincinnati, OH, for Plaintiff.

Robert Bowman Craig, Taft, Stettinius & Hollister, Cincinnati, OH, for Defendant.

### ORDER DENYING DEFENDANT'S MOTION TO DISMISS

SPIEGEL, Senior District Judge.

This matter is before the Court on Defendant University of Cincinnati Medical Center's motion to dismiss (doc. 3), to which Plaintiff Phyllis Pease responded (doc. 6) and Defendant replied (doc. 8).

### BACKGROUND

On February 16, 1996, Plaintiff Phyllis Pease filed this action against Defendant University of Cincinnati Medical Center, alleging that Defendant discriminated against her in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* (doc. 10.) On July 24, 1997, Defendant filed a motion to dismiss Plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(1), asserting that this Court lacks jurisdiction to adjudicate this action. Specifically, Defendant asserts that the Eleventh

Amendment to the United States Constitution bars Plaintiff from bringing such an action against Defendant because Defendant is an instrumentality of the State of Ohio. Plaintiff asserts that this Court should reject Defendant's motion, arguing that Congress properly expressed its intention to abrogate the states' immunity when it amended the ADEA in 1974 in order to enable a private citizen to file suit against a state agency.

## DISCUSSION

■ The Eleventh Amendment of the United States Constitution provides,

[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. While a literal reading of the Eleventh Amendment indicates that a suit brought by a private person against a State in federal court would be barred, federal courts recognize that the bar is not absolute. *Timmer v. Michigan Dep't of Commerce,* 104 F.3d 833, 836 (6th Cir. 1997) (citing *Port Auth. Trans–Hudson Corp. v. Feeney,* 495 U.S. 299, 304, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990)). "States may consent to be sued in federal court or Congress may abrogate their sovereign immunity." *Id.* Defendant, University of Cincinnati Medical Center, is an instrumentality of the State of Ohio as defined in Ohio Revised Code § 2744.01, *et seq.*. The Parties do not dispute that the State of Ohio has not consented to be sued in federal court, therefore the question of state consent is moot. In regards to the second avenue by which a private person may bring suit, Defendant argues that Plaintiff cannot show that Congress has abrogated the states' Eleventh Amendment immunity and therefore Plaintiff's action should be dismissed in its entirety.

■ The United States Supreme Court decision in *Seminole Tribe v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) was a significant departure from the way courts previously viewed Congress' approach to abrogating states' immunity under

the Eleventh Amendment. Before *Seminole Tribe,* Congress could validly abrogate the states' Eleventh Amendment immunity by either enacting a statute pursuant to its powers under the Interstate Commerce Clause, *Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), or § 5 of the Fourteenth Amendment to the United States Constitution, *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). Subsequently in *Seminole Tribe,* the Supreme Court expressly overruled *Union Gas Co.,* concluding that Congress' authority under the Commerce Clause was not a viable source for abrogating the states' Eleventh Amendment immunity. *Seminole Tribe,* 517 U.S. at 66, 116 S.Ct. 1114. The Court stated that the powers granted to Congress in Article I of the Constitution could not be used to expand federal court jurisdiction under Article III at the expense of the states' Eleventh Amendment immunity. *Id.* at 72–73, 116 S.Ct. 1114. Although renouncing Congress' power under the Commerce Clause to abrogate the states' immunity, the Court reaffirmed its position that Congress could properly abrogate the states' immunity pursuant to statutes enacted under § 5 of the Fourteenth Amendment. *Id.* at 65–73, 116 S.Ct. 1114. Accordingly, when Congress chooses to abrogate the states' Eleventh Amendment immunity Congress must: 1) make an unequivocal expression of its intent to do so, and 2) act pursuant to a valid exercise of congressional power. *Id.* at 56–58, 116 S.Ct. 1114.

The issues before the Court, then, is whether Congress made a clear expression of its intent to abrogate states' immunity when it passed the amendment to the ADEA and whether Congress acted pursuant to valid exercise of congressional power.

**I. Whether Congress made a clear expression of its intent to abrogate states' Eleventh Amendment immunity.**

■ When the ADEA was originally enacted in 1967, it did not apply to the federal government, the states, or their political subdivisions. *EEOC v. Wyoming,* 460 U.S. 226, 233, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983).

However, in 1974, Congress extended the ADEA to allow for private causes of action against federal, state, and local governments. *Id.* at 233 & n. 5, 103 S.Ct. 1054; *see also* Fair Labor Standards Amendments of 1974, Pub.L. No. 93–259, § 28, 88 Stat. 74 (amending 29 U.S.C. § 630). The ADEA makes it unlawful for an "employer". "to discharge any individual" who is at least 40 years old "because of such individual's age." 29 U.S.C. §§ 623(a), 631(a). Under the 1974 amendment, the term "employer" is defined to include "a State or political subdivision of a State and any agency or instrumentality of a State or a political subdivision of a State." 29 U.S.C. § 630(b)(2). Therefore, we find that such an explicit reference to the State as a potential defendant represents an unequivocal expression of Congress' intent to abrogate states' Eleventh Amendment immunity with respect to suits brought under the ADEA. *See Gregory v. Ashcroft,* 501 U.S. 452, 467, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991) (recognizing that the ADEA extended to employment by state and local governments); *Wyoming,* 460 U.S. at 243–44, 103 S.Ct. 1054 (stating that "there is no doubt what the intent of Congress was: to extend the application of the ADEA to the states."); *Hurd v. Pittsburgh State Univ.,* 29 F.3d 564, 564–65 (10th Cir.1994) (affirming district court's finding that Congress intended to abrogate states' Eleventh Amendment immunity when it passed the ADEA); *Ramirez v. Puerto Rico Fire Serv.,* 715 F.2d 694, 701 (1st Cir.1983) (declaring that "the ADEA's express authorization for the maintenance of suits against state employers comprises adequate evidence to demonstrate congressional will that Eleventh Amendment immunity be abrogated.").

Therefore, the ultimate question for this Court to decide is whether Congress' abrogation of the states' Eleventh Amendment immunity in the 1974 amendment to the ADEA was a valid exercise of Congress' authority under § 5 of the Fourteenth Amendment. Defendant asserts that Congress could not validly act on its purported intent under the Constitution, because the extension of the ADEA to the states was pursuant to the Interstate Commerce Clause, not § 5 of the Fourteenth Amendment.

## II.. Whether Congress acted pursuant to § 5 of the Fourteenth Amendment when it amended the ADEA in 1974.

Although this issue has rapped on the chamber door of the Supreme Court on at least two separate occasions, the Court has chosen to ignore the knocks. For instance, the Court sidestepped the issue in *Wyoming, supra,* stating that "[t]he extension of the ADEA to cover state and local governments, ... was a valid exercise of Congress' powers under the Commerce Clause. We need not decide whether it could also be upheld as an exercise of Congress' powers under § 5 of the Fourteenth Amendment." *Wyoming,* 460 U.S. at 243, 103 S.Ct. 1054 (holding that the extension of the ADEA to the states was a valid exercise of congressional power under the Commerce Clause, yet leaving unresolved the Fourteenth Amendment question). The Court had another opportunity to answer the rap in *Gregory, supra;* however, the Court simply acknowledged its previous reservation of the Fourteenth Amendment question in *Wyoming,* and then addressed only the Commerce Clause. *Gregory,* 501 U.S. at 468, 111 S.Ct. 2395 (holding that Missouri's mandatory retirement requirement for state judges does not violate the ADEA).

Nevertheless, Defendant argues the Supreme Court has resolved the issue. In particular, Defendant asserts that Justice Burger's dissenting opinion in *Wyoming* (which is joined by Justices Powell, Rehnquist and O'Connor), coupled with the concurring opinion of Justice Stevens, clearly shows that a majority of the Court concluded that the 1974 ADEA amendment could only have been adopted pursuant to Congress' authority under the Commerce Clause. In support of its argument, Defendant points to Justice Stevens' concurring opinion, which states:

[i]n final analysis, we [the Court] are construing the scope of the power granted to Congress by the Commerce Clause of the Constitution.

*Wyoming,* 460 U.S. at 244, 103 S.Ct. 1054 (Stevens J., concurring). Defendant suggests that Justice Stevens' concurrence is an emphasis of his reliance on Congress having

enacted the 1974 ADEA amendment pursuant only to Congress' authority under the Commerce Clause. Contrary to Defendant's proposition, the Supreme Court has not specifically answered the question of whether Congress acted under the Fourteenth Amendment in amending the ADEA. The language used by Justice Stevens is insufficient to show that he agreed with the four Justices in the dissent who indicated that the ADEA was enacted pursuant to only the Commerce Clause. Moreover, Justice Stevens' opinion merely emphasized that the authority by which the Court conducted its "final analysis" in *Wyoming* was the Commerce Clause, and nowhere in his concurrence does he indicate any dissatisfaction with the majority's reserving the issue of whether Congress acted pursuant to § 5 of the Fourteenth Amendment when extending the ADEA to the state and local governments. Thus, we conclude that Justice Stevens concurs with the majority's opinion and

reservation of the issue and cannot be counted with the dissent so to make up a 5–4 majority opinion that Congress acted pursuant to only the Commerce Clause power. Moreover, although Justice O'Connor, who joins the dissent in *Wyoming,* wrote the opinion for the Court in *Gregory,* we find no support in that decision for an assertion that the issue has been resolved by the Court.[1] Furthermore, Justice O'Connor declined altogether to decide whether Congress acted under § 5 of the Fourteenth Amendment in enacting the ADEA amendment. *Gregory,* 501 U.S. at 467–70, 111 S.Ct. 2395.[2]

■ Although the Sixth Circuit has not decided the issue whether Congress acted pursuant to § 5 of the Fourteenth Amendment when it extended the ADEA to the state and local governments, the issue has been adjudicated by a number of other district and circuit courts. The majority of courts addressing the issue have concluded that Congress did enact the 1974 amendment

1. This Court also notes Justice White's separate opinion in *Gregory* as evidence that the issue was left unresolved in both *Wyoming* and *Gregory.* Justice White noted:

In *EEOC v. Wyoming,* 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983), we held that the extension of the ADEA to the States was a valid exercise of congressional power under the Commerce Clause. **We left open, the issue whether it was also a valid exercise of Congress' power under § 5 of the Fourteenth Amendment.** *Cf. Fitzpatrick v. Bitzer,* 427 U.S. 445, 453 n. 9, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) (extension of Title VII of Civil Rights Act of 1964 to States was pursuant to Congress' § 5 power). **Although we need not resolve the issue in this case,** I note that at least two Courts of Appeals have held that the ADEA was enacted pursuant to Congress' § 5 power. *See Heiar v. Crawford County,* 746 F.2d 1190, 1193–1194 (C.A.7 1984); *Ramirez v. Puerto Rico Fire Service,* 715 F.2d 694, 700 (C.A.1 1983).

*Gregory,* 501 U.S. at 480 n. 1, 111 S.Ct. 2395 (White, J., concurring in part and dissenting in part) (emphasis added).

2. Although the Court reserved resolution of the Fourteenth Amendment question in *Wyoming,* the Court indicated that it was not necessary for Congress to explicitly reference its enforcement power under the Fourteenth Amendment when enacting the 1974 amendment to the ADEA. Specifically, the Court declared,

[i]t is in the nature of our review of congressional legislation defended on the basis of Congress' powers under § 5 of the Fourteenth

Amendment that we be able to discern some legislative purpose or factual predicate that supports the exercise of that power. That does not mean, however, that Congress need anywhere recite the words "section 5" or "Fourteenth Amendment" or "equal protection," *see e.g., Fullilove v. Klutznick,* 448 U.S. 448, 476–478, 100 S.Ct. 2758, 65 L.Ed.2d 902 (1980) (Burger, C.J.), for "[t]he . . . constitutionality of action taken by Congress does not depend on recitals of the power which it undertakes to exercise." *Woods v. Cloyd W. Miller Co.,* 333 U.S. 138, 144, 68 S.Ct. 421, 92 L.Ed. 596 (1948).

*Wyoming,* 460 U.S. at 243–244 n. 18, 103 S.Ct. 1054; *see also Timmer,* 104 F.3d at 840 (rejecting the defendant's argument that "if Congress must articulate a 'clear statement' of its intent to abrogate the states' sovereign immunity, then a *fortiori,* Congress must articulate the basis or bases upon which its power is being exercised."); *Ramirez,* 715 F.2d at 698 (stating "Congress does not have to recite the words 'Section 5,' 'Fourteenth Amendment', or 'Equal Protection' in order for a statute to be based on it."); *EEOC v. Elrod,* 674 F.2d 601, 608 (7th Cir.1982) (same); *Mayer v. University of Minn.,* 940 F.Supp. 1474, 1478 (D.Minn.1996) (declaring that "Congress need not expressly invoke its authority under the Fourteenth Amendment to support an exercise of that power."); *Hurd v. Pittsburg State Univ.,* 821 F.Supp. 1410, 1412 (D.Kan.1993) (same). Therefore, we find Defendant's assertion that Congress needed to explicitly state its authority under the Fourteenth Amendment when enacting the ADEA amendment unpersuasive.

to the ADEA pursuant to its enforcement power under the Fourteenth Amendment. *See, e.g., Hurd v. Pittsburg State Univ.,* 109 F.3d 1540, 1546 (10th Cir.1997); *Blanciak v. Allegheny Ludlum Corp.,* 77 F.3d 690, 695 (3rd Cir.1996); *Hurd,* 29 F.3d at 565; *Santiago v. New York Dep't of Correctional Servs.,* 945 F.2d 25, 31 (2d Cir.1991) (dicta); *Heiar v. Crawford County,* 746 F.2d 1190, 1194 (7th Cir.1984); *Ramirez,* 715 F.2d at 700; *Pietraszewski v. Buffalo State College,* No. 97–CV–0129E(F), 1997 WL 436763, at *1 (W.D.N.Y. Aug.1, 1997); *Ullman v. Rector and Visitors of the Univ. of Virginia,* No. 96–0002–C, 1997 WL 134557, at *4 (W.D.Va. March 12, 1997); *Young v. Univ. of Kansas Med. Ctr.,* No. Civ. A 96–2390–KHV, 1997 WL 150051, at *1 (D.Kan. Feb.26, 1997); *Hodgson v. Univ. of Texas Med. Branch,* 953 F.Supp. 168, 169 (S.D.Tex.1997); *Teichgraeber v. Memorial Union Corp. of Emporia,* 946 F.Supp. 900, 907 (D.Kan.1996).[3] Other courts have concluded that Congress acted pursuant only to the Commerce Clause. *Farkas v. New York State Dep't of Health,* 554 F.Supp. 24, 27–28 (N.D.N.Y.1982), *aff'd,* 767 F.2d 907 (2d Cir.1985); *Bechtel v. New York State Banking Dep't,* No. 92–CV–182S, 1997 WL 667784, at *4 (W.D.N.Y. Oct.14, 1997); *Humenansky v. Board of Regents,* 958 F.Supp. 439, 443 (D.Minn.1997); *MacPherson v. Univ. of Montevallo,* 938 F.Supp. 785, 788–89 (N.D.Ala.1996).

Thus, the Fourteenth Amendment question remains unsettled among the courts. The Supreme Court's recent decision in *City of Boerne v. Flores,* —— U.S. ——, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), further complicates the matter because it "draws into ques-

tion the extent to which the ADEA may be applied to the states." *Goshtasby v. Board of Trustees,* 123 F.3d 427, 428 (7th Cir.1997) (holding that the defendant University's contention that it enjoyed Eleventh Amendment immunity in litigation involving the ADEA was not frivolous in light of *City of Boerne,* and that the proceedings in district court may be stayed pending resolution on the merits by the appellate panel).[4]

In *City of Boerne,* the Court struck down the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. § 2000bb *et seq.,* as unconstitutional, concluding that Congress had gone beyond merely enforcing the substantive rights guaranteed to individuals by the Fourteenth Amendment and had created new substantive rights. *Id.* at 2166. In *City of Boerne,* the Court reaffirmed Congress' authority to legislate pursuant to § 5 of the Fourteenth Amendment, however, it warned that Congress must distinguish between legislation which appropriately remedies or prevents unconstitutional action and that which substantively changes governing constitutional law as interpreted by the Supreme Court. *Id.* at 2164–65. The Court reached this conclusion after considering the statute's purpose and function, in light of both its legislative history and its practical effect. *Id.* at 2169–71. Therefore, in accordance with the *City of Boerne* decision, we must not only assess the adoption of the ADEA amendment in regards to Congress' intent and function, but also look beyond the legislative history to determine whether Congress properly acted under its Fourteenth Amendment enforcement power. *Id.* at 2170. Moreover, we

---

3. Even prior to the Supreme Court's decision in *Wyoming,* the Fourth Circuit concluded that Congress passed the ADEA pursuant to both the Commerce Clause and § 5 of the Fourteenth Amendment. *See Arritt v. Grisell,* 567 F.2d 1267, 1271 (4th Cir.1977) (stating that "after considering the legislative history and the [Supreme] Court's opinion in *Fitzpatrick v. Bitzer,* 427 U.S. 445, 453–56 & 453 n. 9, 96 S.Ct. 2666, 49 L.Ed.2d 614, we conclude that in enacting the ADEA and in extending it to the states Congress exercised its powers under § 5 of the Fourteenth Amendment.")

4. Prior to the Court's decision in *City of Boerne,* the Seventh Circuit held a number of times that Congress' abrogation of the states' Eleventh

Amendment immunity under the ADEA was a valid exercise of congressional authority under § 5 of the Fourteenth Amendment. *See e.g., Heiar,* 746 F.2d at 1194; *Elrod,* 674 F.2d at 609. In *Goshtasby,* even though the Seventh Circuit panel did not reach a conclusion on the issue of whether litigation under the ADEA against the defendant University must take place in state rather than federal court, the court emphasized that the *City of Boerne* decision significantly impacted its previous rulings on the Fourteenth Amendment question and raised serious questions concerning the constitutionality of Congress' authority in regard to the ADEA and the abrogation of states immunity under the statute. *Goshtasby,* 123 F.3d at 428.

must determine whether there is some proportionality between the "the injury to be prevented or remedied and the means adopted to that end." *Id.* at 2164; *see also Young v. Pennsylvania House of Representatives, Republican Caucus,* 994 F.Supp. 282, 286–87 (M.D.Pa.1998) (stating that the court must "consider whether the ADEA is in fact designed to enforce some Fourteenth Amendment right").

We agree with the courts which conclude that Congress acted pursuant to its enforcement power under the Fourteenth Amendment when it extended the ADEA to the state and local governments. First, the scant legislative history surrounding the ADEA's extension [5] for private rights of action against federal, state, and local governments shows that Congress sought to remedy the problem of age discrimination, not necessarily to remedy any purported impact the discrimination had on commerce. Specifically, Congress enacted the ADEA in 1967 with the aim to promote the employment of older persons based on ability, to prohibit arbitrary age discrimination, and to aid in studying the relationship between age and employment. *EEOC v. Elrod,* 674 F.2d 601, 604 (7th Cir.1982) (citing 29 U.S.C. § 621(b)). On March 9, 1972, Senator Bentsen sponsored an amendment which extended the ADEA to government employees. *Id.* at 604 (citing S. 3318, 92d Cong., 2d Sess. (1972) 118 Cong.Rec. 7745 (1972)) When advocating on behalf of the ADEA's extension to state and local governments, Senator Bentsen compared the amendment to the ADEA as being similar to the amendments to Title VII which were effectively passed pursuant to Congress' authority under § 5 of the Fourteenth Amendment. *Id.* at 604–605 (citing H.R.Rep. No. 92–238, 92d Cong., 2d Sess., reprinted in 1972 U.S.C.C.A.N. 2137, 2154).[6]

Although Senator Bentsen argued that the same principles which necessitated the passing of the Title VII amendments also supported the passing of the ADEA amendment, the ADEA amendment—after being connected with two other bills—failed to survive either the House or the Senate conference committees. *Id.* (citing S.Rep. No. 93–690, 93d Cong., 2d Sess. 55 (1974); 120 Cong.Rec. 8768 (1974)). The amendment to the ADEA was reintroduced two years later, this time connected with a number of amendments to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.,* ("FLSA"). While the amendments to FLSA extended its coverage to federal, state, and local employees, domestic service employees, and retail and service employees, and included increases in the minimum wage for various classifications of agricultural and non-agricultural workers, the ADEA amendment was simply seen as a logical extension of the FLSA coverage to federal, state, and local government employees. *Id.* at 605 (citing H.R.Rep. No. 93–913, 93d Cong., 2d Sess., reprinted in (1974) U.S.C.C.A.N. 2811, 2812 (FLSA amendments) & S.Rep. No. 93–690, 93d Cong., 2d Sess. 55 (1974), H.R.Rep. No. 93–913, 93d Cong., 2d Sess., reprinted in 1974 U.S.C.C.A.N. 2811, 2849). Although recognized as an extension of the coverage of the FLSA to government employees, the ADEA amendment's primary focus was inherently different than that of the FLSA. In regards to the FLSA amendments, Congress explicitly invoked the Commerce Clause in the introductory statement, stating that:

(b) It is hereby declared to be the policy of this Act, through the exercise by Congress of its power to regulate commerce among the several States and with foreign nations, to correct and as rapidly as practicable to eliminate the conditions ... in such

---

**5.** The Court in *Wyoming* expressed its approval of examining the legislative history to determine the source of congressional authority under the statute. *Wyoming,* 460 U.S. at 243 n. 18, 103 S.Ct. 1054.

**6.** Reviewing the legislative history of the ADEA and Title VII of the Civil Rights Act of 1964, at least one court has recognized that the similarity between the ADEA and Title VII "is not accidental" *Arritt,* 567 F.2d at 1271 n. 11 (noting that

speeches on the floor of both houses of Congress referred to the proposed ban on age discrimination in employment as being justified on the same bases as those supporting prohibitions already included in Title VII); *Cf. Martin v. State of Kansas,* 978 F.Supp. 992, 995 n. 2 (D.Kan.1997) (indicating that the ADEA is similar to the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.,* which is a valid exercise of congressional power).

industries without substantially curtailing employment earning power.

H.R.Rep. No. 913, 93th Cong., 2d Sess. (1974), 1974 U.S.C.C.A.N. 2811, 1974 WL 11448, at *3. Furthermore, Congress indicated that the purpose of the legislation is:

> to seek to implement the policy of the [FLSA] by (1) providing an increase in the minimum wage rate, and (2) extending the benefits and protection of the [FLSA] to workers engaged in commerce or in the production of goods for commerce, or employed in enterprises engaged in commerce or in the production of goods for commerce.

*Id.* In contrast, the introduction to the amendment to the ADEA shows that Congress' attention was primarily focused on the problem of age discrimination, stating:

> The ADEA prohibits discrimination in employment on the basis of age in matters of hiring, job retention, compensation, and other terms, conditions or privileges of employment. . . . As the President said in his message of March 23, 1972, supporting such an extension of coverage under the ADEA, 'Discrimination based on age— what some people call 'age-ism'—can be as great an evil in our society as discrimination based on race or religion or any other characteristic which ignores a person's unique status as an individual and treats him or her as a member of some arbitrarily-defined group.

*Id.* at *84–85; *see also* 120 Cong.Rec. S8768 (1974) (statement of Senator Bentsen) (stating that "[t]he passage of this measure [the ADEA amendment] insures that Government employees will be subject to the same protections against arbitrary employment [discrimination] based on age as are employees in the private sector. I am pleased that this long struggle is now ending, and that this provision will be written into law.").

Defendant relies on *Wilson–Jones v. Caviness,* 99 F.3d 203, 205–206 (6th Cir.1996), in which the court dismissed a claim under the FLSA by a state employee against the Ohio Civil Rights Commission due to a lack of subject matter jurisdiction. As a basis for its decision, the court noted that the FLSA's wage and hour provisions were enacted pursuant to Congress' authority under the Commerce Clause and that the Commerce Clause power alone was insufficient to abrogate state immunity. *Id.* at 207. Defendant contends that *Wilson–Jones* supports its assertion that either Congress had to explicitly declare the ADEA amendment was passed to enforce the Fourteenth Amendment, or the statute must promote only efforts to remedy discrimination on the basis of sex and gender. Since Congress did not need to explicitly reference the Fourteenth Amendment when enacting such legislation, *Timmer,* 104 F.3d at 839, Defendant's assertion suggests that because age has not been recognized as a suspect or quasi suspect class similar to race and gender, we should not find that Congress enacted the 1974 ADEA amendment to remedy discrimination pursuant to Fourteenth Amendment protections.

■ Contrary to Defendant's contention, we believe that the legislative history and purpose set forth in the language of the ADEA amendment shows that the discrimination the amendment sought to address is quite different than the discrimination sought to be remedied by the FLSA amendments; therefore, we do not rely on the FLSA as a basis for determining congressional authority in enacting the ADEA amendment. Moreover, because the discrimination which Congress sought to address when it amended the ADEA in 1974 is not that which the Sixth Circuit indicates Congress addressed in amending the FLSA in *Wilson–Jones,* we find *Wilson–Jones* inapposite. In *Wilson–Jones,* the court makes clear that the reason that the FLSA does not fall within the class of legislation that could be regarded as an enactment to enforce the Fourteenth Amendment is because "it is aimed to remedy a mundane 'discrimination' between private- and public-sector workers" neither of which has been recognized as a class of persons that Fourteenth Amendment jurisprudence has identified as deserving special protection. *Wilson–Jones,* 99 F.3d at 210. If we were to accept Defendant's proposition under *Wilson–Jones,* then we must conclude that older persons cannot be recognized as a class which Congress could enact legislation pursuant to the Fourteenth Amendment to remedy

discrimination. However, "[t]he fact that a particular group is not a suspect class which is entitled to the protection of strict scrutiny analysis under the Equal Protection Clause does not mean that it is not entitled to any Fourteenth Amendment protection at all." *Young,* 994 F.Supp. 282, 286–87. Although the Supreme Court has not found the aged to constitute a suspect class requiring review under the strict scrutiny analysis, the Court has analyzed age under the more relaxed rational basis standard. *Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 313, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976); *see also Young,* 994 F.Supp. 282, 286–87. "The particular standard applied by the court does not define the presence or absence of Fourteenth Amendment protection." *Young,* 994 F.Supp. 282, 286–87 (citations omitted); *Martin v. State of Kansas,* 978 F.Supp. 992, 995 (D.Kan.1997) (concluding that under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.,* (the "ADA"), which is significantly similar to the ADEA, "Congress' power to enforce the Equal Protection Clause does not depend on the applicability of a heightened judicial standard of review."). Accordingly, we find that age discrimination is subject to review under the Fourteenth Amendment, and when enacting the amendment to the ADEA, Congress sought to remedy violations of the Fourteenth Amendment's guarantee of equal protection, not redefine that guarantee. *Id.* Furthermore, we believe that "[t]here is a clear congruence and proportionality between the injury addressed by the ADEA—unfair discrimination in employment, based solely on an employee's age—and the means adopted by the statute to remedy that injury." *Id.* Because we believe that such action by Congress was within the letter and spirit of the Constitution, we find that Congress' abrogation of the states' immunity was pursuant to a valid exercise of congressional authority.

## CONCLUSION

Having reviewed the legislative history and the case law surrounding the ADEA and its extension to the federal, state, and local governments, as well as the cases decided since *City of Boerne,* we conclude that Congress clearly expressed intent to abrogate states' immunity when it amended the ADEA in 1974 and such amendment was within the ambit of congressional authority under § 5 of the Fourteenth Amendment. Accordingly, Defendant's motion to dismiss Plaintiff's Complaint is hereby DENIED.

SO ORDERED.